## HARVE WELLS v. THE STATE.

### No. 2407. Decided February 19, 1902.
### Motion for Rehearing Decided April 30, 1902.

**1.—Rape—Evidence—Impeachment of Witness.**

On a trial for rape it is not admissible to prove by a witness what a third party had told the witness that defendant, who was not present at this conversation, had told said third party about his intention to have carnal intercourse with the prosecutrix. When the third party, as a witness, denied he had made such statement, that was an end of the matter, and he could not be impeached concerning it. And defendant not being in any way responsible for such statement, if made by a third party, it could not be introduced directly or indirectly against him.

**2.—Same—Evidence.**

On a trial for rape, it was not competent to prove that shortly after the outrage the husband of prosecutrix made an assault upon defendant, believing him to be the man who had raped his wife.

**3.—Same—Statements and Conduct of Prosecutrix.**

On a trial for rape, the statements and conduct of prosecutrix, a very few moments after defendant had left the scene of the alleged rape, was admissible in evidence.

### ON MOTION FOR REHEARING.

**4.—Evidence—Act and Declaration of Third Party.**

Any act or declaration of a third party can not incriminate or be used in evidence to the prejudice of defendant unless defendant was so connected with it as to make it admissible as evidence against him.

**5.—Bill of Exceptions.**

A bill of exceptions must be approved by the trial judge.

Appeal from the District Court of Collin. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of rape; penalty, seven years imprisonment in the penitentiary.

The indictment charged appellant with the rape of Jennie Cantrell, on the 7th day of June, 1901.

Briefly stated, the facts shown by the record are that the prosecutrix was the wife of P. H. Cantrell. She and her husband and her father had stopped to stay all night at the Central wagon yard, in McKinney. They went to bed quite early, in what was called the "bunk room" at the wagon yard; the prosecutrix and her husband lying upon a pallet in one corner of the room and her father on a pallet in another corner. About 10 o'clock, defendant and his companion, Cummins, also stopped to stay for the night at the wagon yard, and the proprietor told them to go into the bunk house and sleep there. They went into this bunk room, and defendant struck a match and saw Mrs. Cantrell lying upon her pallet with her clothes up under her arms, and her body in a nude and exposed condition. He and Cummins then went up town to get supper. When they returned they went into the bunk house, and defendant again struck a match and they found the woman still lying upon her pallet in

the same condition as when they saw her at first. Wells, the defendant, laid down upon a pallet close to that upon which the woman was lying, and Cummins sat in the door smoking. Mrs. Cantrell says she was awakened and found a man on top of her copulating with her. Becoming satisfied that it was not her husband, she pushed him off, waked up her husband, and told him there was a man there; and he turned on the electric light and saw the man; ordered him to get up and get out of there. He also waked his wife's father up. The defendant and Cummins immediately started off. They asked Cockrell, the proprietor of the wagon yard, where they could find a hotel, and went off up town. Meantime Mrs. Cantrell had told her father and husband the facts, and they started up town to find defendant. They found him and Cummins sitting in front of a saloon, and Cantrell attacked defendant, cutting him with a knife. A policeman who was near by arrested the parties and took them to the calaboose. Just after the husband and father started out to hunt defendant, Cockrell, the proprietor of the wagon yard, went into the room where Mrs. Cantrell was and found her sitting upon the bunk crying bitterly. She gave him to understand what had happened.

The State was permitted to prove, over defendant's objections, by the witness Pafford, that the morning after defendant's arrest, and when defendant was not present, Cummins told him (Pafford) that defendant had told him (Cummins), the night before, that he (defendant) was going down to the wagon yard and have carnal intercourse with prosecutrix.

No further statement necessary.

*A. S. Dickenson,* for appellant.

*Wallace Hughston,* County Attorney, and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This is an appeal from a conviction for rape, the punishment being assessed at seven years confinement in the penitentiary.

The State proved by the witness Pafford that he saw Cummins the morning after defendant's arrest at the calaboose; he stated that defendant told him the previous night that he was going down to the wagon yard and have carnal intercourse with that woman, meaning prosecutrix. Defendant was not present at the time of this conversation but was in the county jail. Objection was urged that this was hearsay; that it was collateral to any issue in the case and inadmissible for any purpose, and could throw no light upon the transaction, and only served to prejudice the jury. The court qualifies this bill by stating that Cummins denied these statements, and they were admitted for the purpose of impeachment; and also because defendant when testifying as a witness denied making the statement. We are of opinion that this testimony should not have gone to the jury. When the witness Cummins denied making

the statements, this was an end to the matter. The confessions, or declaration or admissions tending to incriminate defendant, or connect him with the rape should not be proved in this manner. Appellant was in no way responsible for the statement of Cummins, and any statement made by Cummins could not be introduced as evidence against defendant directly or indirectly.

Witnesses Cantrell and Land were permitted to testify that the husband made an assault upon appellant shortly after the alleged outrage of the prosecutrix—Cantrell being her husband. This occurred some time after the alleged outrage in a different part of the town. Various objections were urged to the admission of this testimony. The court says, by way of explanation, "that it was admitted as a circumstance to show that the husband believed that he had found the man who had raped his wife." This testimony is inadmissible, even for this purpose. If in fact the witness identified defendant, he could so state; but it was not necessary to go into the details of an assault made by the husband upon the defendant, in order to admit evidence that witness identified the assaulted party.

The testimony of the witness Cockrell to statements and conduct of the prosecutrix immediately after the alleged outrage was properly admitted. Defendant and his witness Cummins testified substantially to two main facts: (1) there was no rape, that it was an indecent familiarity on his part with the woman; and (2) that she was willing to his suggestion on condition of the payment of money. The matters testified by witness Cockrell occurred a very few moments after the defendant left the room, the scene of the alleged rape.

The remaining questions, as we understand the record, are without substantial merit.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

DAVIDSON, PRESIDING JUDGE.—The judgment in this case was reversed and the cause remanded at the Dallas term, 1902, and now comes before us on the State's motion for rehearing.

In the former opinion we held that the evidence of the witness Pafford as to what Cummins stated to him on the morning after appellant's arrest, in regard to what defendant stated to him as to his intention, was not admissible as impeaching testimony. Reviewing the bill of exceptions, it shows: "Pafford stated, 'I saw Cummins next morning after defendant's arrest at the calaboose; he was in the calaboose. He said that defendant told him the night before that he was going back down to the wagon yard and have carnal intercourse with that woman. Defendant was not present.'" The court admitted the same as impeaching evidence. Defendant also, in testifying as a witness in his own behalf, de-

nied making said statement. As stated in the original opinion: "When the witness Cummins denied making the statements, this was an end to the matter. The confessions or declarations or admissions tending to incriminate defendant, or connect him with the rape, should not be proved in this manner. Appellant was in no way responsible for the statement of Cummins, and any statement made by Cummins could not be introduced as evidence against defendant, directly or indirectly." We further state in this connection, that any act or declaration made by Cummins could not incriminate or be used to the prejudice of defendant, unless defendant was so connected with it as to make it admissible evidence against him. If, as intimated in the court's qualification, this testimony was sought to impeach defendant's denial of the statement, it was clearly erroneous. If defendant made this statement to Cummins, it could have been proved by anyone who heard that statement or knew it to be true. Cummins could have been placed upon the stand to testify to the statement made by defendant. If Cummins was placed upon the stand to prove the statement as having been made by appellant, and denied it, Cummins could not then be impeached by showing that he (Cummins) had told Pafford that defendant had made the statement. So, upon this bill of exceptions, we do not think the State's motion for rehearing is well taken.

In regard to what was stated in the original opinion in regard to the witnesses Cantrell and Land, it was based upon the understanding that the bill of exceptions had been authenticated by the trial judge. Upon an inspection of the record we find that this is not correct; that the trial judge, so far as this record is concerned, did not in fact approve this bill of exceptions. But there is this qualification to the bill, which tends to show that the court did approve the bill, but the record fails to incorporate his name: "It was admitted as a circumstance to show that the husband believed that he had found the man who had raped his wife." If, as a matter of fact, this evidence was admitted, it was erroneous, as stated in the original opinion; but as presented by the record it can not be reviewed because not approved by the judge. And this much is said in order to make the opinion correspond with the record. The motion for rehearing is overruled.

*Rehearing overruled.*