### J. B. Taylor v. The State.

No. 3595.   Decided June 9, 1915.

Rehearing denied October 13, 1915.

**1.—Murder—Manslaughter—Principal—Evidence.**

Where the State sought the conviction on the theory that the defendant was a principal in the commission of the offense, it having been shown that he

was present at the time of the homicide, testimony of all the facts and circumstances showing that he acted together with the person committing the offense at the time of its commission, was admissible in evidence to show that he aided by act or encouraged by words or gestures his son, the person who did the shooting at the time.

#### 2.—Same—Charge of Court—Principals.

Where, upon trial of murder and a conviction of manslaughter, the court's main charge on principals was defective, it would have presented reversible error under the particular facts of the instant case, had the court not given a special requested charge on this issue, which cured the defect.

#### 3.—Same—Presence of Defendant—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter, it was admitted that defendant was present at the time his son did the shooting, but it was contended that he did not 'encourage by words or gestures the person who did the shooting, and did no act that would constitute him a· principal, the court should have instructed· the jury that the mere presence of defendant would not constitute him a principal, unless he gave such aid, etc., at the time of the commission of the offense.

#### 4.—Same—Evidence—Impeaching Own Witness.

Where, upon trial of murder and a conviction of manslaughter, the State called to the witness stand a daughter-in-law of defendant, who was asked, among other things, whether she did not put her hand over her ears to keep from hearing the report of the gun, etc., to which she replied that she did this after the shot was fired, etc., whereupon the State was permitted to show her her former statement to refresh her memory, which was permissible, but the State was not authorized to prove what this witness had testified to on a former occasion, it not being shown that the witness swore to facts injurious to the State's cause.

#### 5.—Same—Rule Stated—Common Law—Impeaching Own Witness.

At common law, one could not impeach his own witness. Our Code has, however, so modified this rule that a party may attack the testimony of his own witness when the facts stated by the witness called by him are injurious to him; but in no other instance can he attack a witness whom he has called, who merely fails to remember, refuses to ·testify, or fails to make out the State's case. Following Goss v. State, 57 Texas Crim. Rep., 557, and other cases.

#### 6.—Same—Evidence—Case Stated—Former Statement of Witness.

Having attempted to refresh the witness' memory by exhibiting to ner a copy of the statement she made at the coroner's inquest, and she having denied making such statement, it was error to permit the State to introduce in evidence portions of her said statement made at the coroner's inquest. Following Dunagain v. State, 38 Texas Crim. Rep., 614, and other cases.

#### 7.—Same—Evidence—Cross-examination—Moral Turpitude.

Upon trial of murder, the court should not have admitted in evidence testimony that some thirty years before the trial, defendant had killed a man in Georgia, and at that time was a member of the Jesse James gang. This was entirely too remote in time to affect defendant's standing as a law-abiding citizen.

#### 8.—Same—Charge of Court—Self-defense—Threats—Principals.

Where, upon trial of murder and a conviction of manslaughter, the defendant testified that before his son fired the gun which killed the deceased, the latter drew a pistol, etc., the court should have given in charge the law of self-defense as to said son, both from apparent danger to himself and his father, viewed in the light of communicated threats, and whether defendant was a principal, etc.,

and if his said son was justifiable as viewed from his standpoint, defendant would not be guilty.

**9.—Same—Charge of Court—Reasonable Doubt.**

Where the court's charge on reasonable doubt might be misleading, but on another trial could not again arise as defendant was acquitted of murder, still language of such doubtful construction should not be used in applying the law of reasonable doubt, as between murder and manslaughter.

Appeal from the District Court of Smith. Tried below before the Hon. J. A. Bulloch, Special Judge.

Appeal from a conviction of manslaughter; penalty, two years confinement in the penitentiary.

The opinion states the case.

*Simpson, Lasseter & Gentry*, for appellant.—On question of impeaching own witness: Price v. State, 147 S. W. Rep., 243; Evans v. State, 172 S. W. Rep., 795; Skeen v. State, 51 Texas Crim. Rep., 39; Ozark v. State, 51 id., 106; Williford v. State, 36 id., 414; Antu v. State, 147 S. W. Rep., 234.

On question of credibility of witness and moral turpitude: Bowers v. State, 71 S. W. Rep., 284.

On question of court's charge on self-defense: Ellis v. State, 30 Texas Crim. App., 601; Grant v. State, 56 Texas Crim. Rep., 411, 120 S. W. Rep., 481; Greta v. State, 9 Texas Crim. App., 429; Eanes v. State, 10 id., 421.

On question of court's failure to charge on threats in connection with self-defense: Fielding v. State, 48 Texas Crim. Rep., 334; Armsworthy v. State, 48 id., 413; Jay v. State, 52 id., 567.

On question of court's charge on principal: Floyd v. State, 29 Texas Crim. App., 349; Walker v. State, 29 id., 621; Leslie v. State, 42 Texas Crim. Rep., 65; Renner v. State, 43 id., 347; Davis v. State, 61 Texas Crim. Rep., 611, 136 S. W. Rep., 45.

*C. C. McDonald*, Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was indicted, charged with murder. When tried he was adjudged guilty of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The evidence in this case would show that the deceased, John Gilley, was a deputy sheriff, and on the 24th of last December had arrested some negroes living on Frank Taylor's farm. While carrying them to Tyler Jesse Taylor overtook the officers. What then took place is a mooted question. The State's evidence is that when Jesse Taylor overtook the officers he cursed and abused them, and assaulted Mr. Broadwater, who was assisting Deputy Sheriff Gilley. Broadwater's testimony is, that deceased, Gilley, struck Jesse Taylor on the head with a pistol, it being accidentally discharged, killing Jesse Taylor. Appellant and his other two sons, Frank and Willis Taylor, placed no confidence in this theory of the case, but from what they heard they

believed that Gilley had intentionally shot Jesse Taylor, when he had committed no assault; that he had followed Gilley and Broadwater to secure the release of the negroes, and had only requested their release, when words ensued and Gilley shot Jesse Taylor in the back of the head. Without discussing further the evidence in regard to the killing of Jesse Taylor, or commenting thereon, the record makes it evident that a bad state of feeling existed between deceased, Gilley, and Broadwater, on the one hand, and appellant and his two sons, Frank and Willis, on the other hand, up to and until the time Gilley was killed on the morning of February 5th last.

Willis Taylor fired the shot that killed Gilley. This is shown by all the evidence both for the State and defendant. The State sought the conviction of appellant on the theory that he was a principal in the commission of the offense. To sustain this it showed that after the killing of Jesse Taylor by Gilley appellant purchased a box of shotgun shells containing buckshot, and carried his gun with him wherever he went. This is not denied by appellant, but he gives as a reason that he did so to defend himself, as he had been informed that Gilley and Broadwater had said they would kill the entire Taylor family. The State further introduced evidence to the effect that after the killing of his son Jesse Taylor appellant had said to Travis Hanks that he believed Gilley had murdered Jesse, and they could not both live in the same community or county. In addition to this the State introduced evidence which would show that the grand jury was in session and were examining into the facts relating to the killing of Jesse Taylor, Gilley having been bound over to the grand jury for having killed Jesse Taylor; that a subpoena had issued for Broadwater summoning him to appear before the grand jury on a given date, and that appellant was in Tyler on the date of the issuance of this subpoena On the day Broadwater had been summoned to appear before the grand jury, appellant left his home and went to the home of his son Frank Taylor, who lived on one of the roads leading from Gilley's and Broadwater's home to Tyler, carrying a shotgun with him loaded with buckshot. Willis Taylor was at the home of Frank Taylor, and the State contends that he watched the road, and when he saw Gilley and Broadwater coming, he walked into the hall and called "Pa"; that appellant walked into the hall. Willis Taylor had the gun appellant had carried to the home of Frank Taylor that morning, and as Gilley and Broadwater were driving past, Willis fired, killing Gilley and wounding Broadwater.

One of the contentions of appellant is, that these facts and circumstances if true would not support a finding that appellant was guilty as a principal in the commission of the offense, even though Willis Taylor was guilty of some grade of culpable homicide. This contention can not be sustained. While the contention of the State is that appellant was also armed at the time with another shotgun, this is vigorously contested by the appellant; also the fact that he knew that Willis intended to shoot Gilley, or that he aided by acts, or encouraged by

words or gestures his son who did the shooting. It is true mere presence, without participation in any manner in the commission of an offense will not constitute one a principal. His presence, however, is a circumstance tending to prove that fact, which, taken with other facts and circumstances, may be sufficient to warrant the conclusion he was a participant, in that he had advised the commission of the offense, was personally present, and by his acts and conduct encouraged the person doing so to commit the offense. It is also true that one personally present must have a knowledge that the person committing the act intends doing so. But knowledge in this instance could be inferred if the jury should find that the State's contention is the correct theory. That appellant had carried the gun to Frank's, knowing Willis would be there; that he perhaps had knowledge that deceased, Gilley, and Broadwater would probably pass there that morning; that he could see Willis watching the road; that when Gilley and Broadwater came in sight Willis had walked into the hall and called appellant; appellant immediately following him and was with Willis when he shot. These facts and circumstances would support a finding that appellant was a principal, and we would not disturb the verdict on that ground. However appellant complains of the charge on who are principals. In his main charge the court instructed the jury: "Now, all persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, and others are present, the true criterion for determining who are principals is: did the parties act together in the commission of the offense? Was the act done in pursuance of a common intent and in pursuance of a previously designed act in which the minds of all united and concurred? If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all." Under the peculiar facts in this case, we think the criticisms of this paragraph meritorious, and this in and of itself would present reversible error had the court not given a special charge requested on this issue. As the case will be reversed on other grounds, we will say that on another trial, in connection with the above paragraph of the charge, as it is admitted that appellant was present, he merely contending that he did not encourage by words or gestures his son Willis, and did no act that would constitute him a principal, the court should instruct the jury that his mere presence would not constitute him a principal, and that, although appellant was present, unless he gave Willis some aid, or encouraged him by his words, gestures or conduct on the occasion, or had advised the commission of the offense, he would not be a principal in the commission of the offense. Having instructed the jury what would constitute one a principal, appellant, under the evidence offered by him, had the right to have presented in the same connection the rules of law governing when mere presence will not constitute one a principal offender.

The State's theory of the case being as above stated, it called Mrs.

Frank Taylor as a witness. She says appellant came to her home that morning, but she did not know whether or not he brought a gun with him; she testified that appellant and Willis Taylor were in one room of the house, and that Willis got up and walked out in the hall and called, "Pa"—that she did not remember hearing him say anything else. She was asked if when they walked out in the hall she did not put her hands over her ears to keep from hearing the report of the gun. She says after the shot she placed her hands over her ears to keep from hearing any more shots if they were fired. This witness had testified at the coroner's inquest and her testimony reduced to writing. The State was permitted to show her this written statement to refresh her memory and propound to her certain questions with this end in view. It is always permissible to refresh the memory of a witness. (McLin v. State, 48 Texas Crim. Rep., 549; Spangler v. State, 41 Texas Crim. Rep., 424.) But after having attempted to do so, one is not permitted to prove what his own witness had testified on a former occasion, unless the witness swears to facts injurious to his cause. Mere failure to swear to facts that one expects to prove by a witness furnishes no grounds to prove that the witness had so testified on a former occasion. At common law one could not impeach his own witness. By placing the witness on the stand he was supposed to vouch for the truthfulness of the witness. Our Code has so far modified the rule that a party may attack the testimony of his own witness when the facts stated by the witness called by him are injurious to him, but in no other instance can be attack a witness whom he calls. (Art. 815, C. C. P.) Mr. Branch in his Criminal Law has well stated the correct rule in section 866: "Error to permit the State to impeach her own witness, where such witness merely fails to remember, or refuses to testify, or fails to make out the State's case. A mere failure to make proof is no ground for impeaching such witness. Bennett v. State, 24 Texas Crim. App., 73, 5 S. W. Rep., 527; Dunagain v. State, 38 Texas Crim. Rep., 614, 44 S. W. Rep., 148; Smith v. State, 45 Texas Crim. Rep., 520, 78 S. W. Rep., 519; Scott v. State, 52 Texas Crim. Rep., 164, 105 S. W. Rep., 796; Wells v. State, 43 Texas Crim. Rep., 451, 67 S. W. Rep., 1020; Owens v. State, 46 Texas Crim. Rep., 14, 79 S. W. Rep., 575; Hanna v. State, 46 Texas Crim. Rep., 5, 79 S. W. Rep., 544; Ware v. State, 49 Texas Crim Rep., 413, 92 S. W. Rep., 1093; Skeen v. State, 51 Texas Crim. Rep., 39, 100 S. W. Rep., 770; Quinn v. State, 51 Texas Crim. Rep., 155, 101 S. W. Rep., 248; Shackleford v. State, 27 S. W. Rep., 8; Finley v. State, 47 S. W. Rep., 1015; Knight v. State, 65 S. W. Rep., 88; Gibson v. State, 29 S. W. Rep., 471; Kessinger v. State, 71 S. W. Rep., 597; Erwin v. State, 32 Texas Crim. Rep., 519, 24 S. W. Rep., 904; Williford v. State, 36 Texas Crim. Rep., 414, 37 S. W. Rep., 761; Ozark v. State, 51 Texas Crim. Rep., 106, 100 S. W. Rep., 927; Gill v. State, 36 Texas Crim. Rep., 589, 38 S. W. Rep., 190; Largin v. State, 37 Texas Crim. Rep., 574, 40 S. W. Rep., 280; Thomas v. State, 14 Texas Crim. App., 70; Dawson v. State, 74 S. W. Rep., 912; Goss v. State, 57 Texas Crim. Rep., 557, 124 S. W. Rep., 108."

Having attempted to refresh the witness' memory by exhibiting to her a copy of the statement she made at the coroner's inquest, and she having denied making such statement, it was error to permit the State to introduce the following portions of her statement made at the coroner's inquest: "Willis Taylor was sitting down in the east room near the north window and got up and went to the north window and said, 'Yonder they are or go, Pa,' I don't remember which, I think he said 'yonder they are.' . . . He (J. B. Taylor) came here this morning afoot, and brought a double-barrel shotgun with him. This is the gun that was on the bed in the west room. . . . When J. B. Taylor and his son Willis left the room I placed my hands over my ears to keep from hearing the gun." It was also error to permit Justice of the Peace Gaines to testify to the same facts.

As Mrs. Frank Taylor is a daughter-in-law of appellant and consequently likely to feel a deep interest in his trial, it may seem a harsh rule of law to the State, that under such circumstances she, having testified to facts at the coroner's inquest which would have a strong tendency to show that Willis Taylor killed Gilley in accordance with a preconceived design of himself and appellant, and, therefore, was guilty of murder, and would have a strong tendency to show that appellant was a principal in the commission of the offense, he being present, yet the State can not prove she did so testify at the coroner's inquest, although she on the trial declines to so testify, yet such is the law. If, in addition to testifying that she did not recollect so testifying, she had testified to facts affirmatively hurtful to the State, she could have been impeached, but it was simply an instance where a witness declined to testify to facts that she had once before testified to, and the State had a good right to believe she would testify on this trial. The witness insisted she had no recollection of whether or not J. B. Taylor brought a gun with him that morning; that she does not recollect Willis Taylor going to the north window and saying, "Yonder they come, Pa," just before the shooting, and that she had no recollection of putting her hands over her ears as they went out of the room to keep from hearing the shot. As before stated, at common law one could not impeach his own witness, and the Legislature has seen proper to modify this rule only to the extent that one may impeach his own witness when, to his surprise, he not only fails to testify as he expected, but instead thereof testifies to facts adversely to the interest of the person placing him on the witness stand.

In a couple of other bills it is shown that after the appellant had testified in his own behalf, he placed witnesses on the stand who say they had known him for thirty years; that appellant had lived in Smith County that long, and his reputation during all that time was that of a peaceable, law-abiding citizen. On cross-examination, State's counsel asked the witnesses if they had heard that appellant killed a man in Georgia before he came to Texas. The first witness answered "No" before the court could rule on the objection that such circumstance was too remote to affect his reputation. The court, however, sustained the

objection when made. Notwithstanding the court did so, when the next witness took the stand the prosecuting officer again propounded the same question, and before an objection could be made, the witness answered, "Yes," and stated that he had also heard that before appellant came to Texas he was a member of the Jesse James gang of outlaws. This was improper and such testimony was wholly inadmissible for any purpose, being too remote in time to affect his standing as a law-abiding citizen. If it was true that appellant had killed a man in Georgia more than thirty years ago, and at that time was a member of the Jesse James gang, yet if during the entire thirty years he has been a citizen of Smith County, Texas, his life and conduct has been that of a peaceable, law-abiding citizen, the remote circumstances should not and will not be permitted to be explored as affecting his standing as a citizen at this time.

These are all the bills in the record, except the objections to the charge as given, and the exceptions to the refusal to give a number of special charges requested. Appellant was found guilty of manslaughter only, and a number of exceptions would pass out, but we do not deem it necessary to detail the various objections raised, nor give the seventeen special charges requested and refused, but rather state simply the law as applicable to the facts in this case. As appellant testified that before Willis Taylor fired the gun, deceased drew a pistol, etc., the court should have given in charge the law of self-defense as to Willis Taylor, both from apparent danger to himself and his father, and the right to defend from danger viewed in the light of threats communicated, and told the jury if Willis Taylor was justifiable, appellant would be guilty of no offense. And instructed them that even though they found Willis Taylor was not justifiable in killing deceased, yet they would find appellant not guilty unless they found beyond a reasonable doubt he was a principal in the commission of the offense. And should also have instructed the jury, that even though appellant was present and aided Willis Taylor, or by his conduct, words or gestures encouraged Willis to commit the offense, yet if at the time he did so it reasonably appeared to him that his life or that of his son Willis was in danger, and acting under such belief he did acts that might otherwise constitute him a principal, he would not be guilty. In other words, if Willis Taylor was justifiable as viewed from his standpoint, appellant would not be guilty. If Willis Taylor was guilty, unless the jury found beyond a reasonable doubt appellant was a principal in the commission of the offense, he would not be guilty. Or if he did acts that would constitute him a principal, yet in so doing, viewing the matter from appellant's standpoint, it reasonably appeared to him that his life or the life of his son Willis was in danger and this was the occasion for him doing such acts, he would not be guilty. The court's charge as given did not aptly and tersely state all these propositions of law, but we are satisfied it is only necessary to call the court's attention to them and he will do so on another trial.

There are some other verbal criticisms of the charge that we do not

deem it necessary to discuss, but will only add that the court used inappropriate language in the following paragraph: "If you shall find, *or have a reasonable doubt thereof,* that the defendant is guilty of some grade of homicide, and that he is not justified under the charge of self-defense, you will acquit him of murder, and find him guilty of no higher grade of offense than manslaughter." Appellant contends that paragraph suggests to the jury to find appellant guilty of manslaughter even though they may have a reasonable doubt of his guilt of such offense. A man who did not read the paragraph critically might be misled into such belief, but on another trial it can not again arise, as appellant has been acquitted of murder, but language of such doubtful construction should not be used in applying the law of reasonable doubt as between murder and manslaughter.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied October 13, 1915.—Reporter.]