## LUTHER MOWERY V. THE STATE.

No. 19006.   Delivered May 5, 1937.

The opinion states the case.

*Currie McCutcheon,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder without malice, and his punishment was assessed at confinement in the state penitentiary for a term of two years.

Appellant's first and main contention is that the testimony is insufficient to justify and sustain his conviction. For a better understanding of the law of this case we deem it necessary to set forth the salient facts proven upon the trial.

On the night of March 21, 1936, the appellant, Ted Shupback, Floyd Vincent, Ralph Galina, and E. F. Brown went to George Kimmell's place of business between the hours of eleven and twelve P. M. While there they purchased some beer and cigarettes for which they failed to pay. Kimmel demanded

payment which precipitated an argument. During the argument one of the men while tapping on the showcase with a beer bottle broke the showcase by tapping it too hard. They then ran out and Kimmell started to follow them, but his clerk, Mr. Francis, admonished him not to follow them out without a gun as they might kill him. He then went behind the counter, picked up a pistol, went out and chased appellant around an automobile two or three times when appellant entered the automobile. While appellant was in the automobile and Kimmell was standing at the side of the automobile talking to him Ted Shupback struck Kimmell on the right side of the head and knocked him down. Shupback, Vincent, and appellant then jumped on him and beat him on the face and head as he lay unconscious on the ground. Three other parties who were present testified in the case, two of whom said appellant struck Kimmell with his fist, while one testified that he struck him with a beer bottle. Mr. Francis, who was an employee of Kimmell, went out to intercede in his behalf. They left Kimmell on the ground and chased Francis into the beer tavern. Kimmell, the injured party, was taken to the hospital where he died soon after his arrival. Dr. Bush testified that he examined deceased immediately after he had been brought to the hospital; that he found a lacerated wound one and one-half inches on the right side of his head; that there were other bruises on his face and head, but that these were superficial; that the blow on the right side of the head fractured the skull and produced death; that it alone was the cause of Kimmell's death.

Bob McKee testified on behalf of the State that he was at the deceased's place of business while the appellant and his companions were there; that he heard appellant tell Kimmell that he had beaten up a boy that night and showed him some scratched places on his arm; that Kimmell told appellant, "You had better get that cloth off and let me clean that off, you might get blood poisoning"; that appellant said it wasn't necessary; that Kimmell then said to appellant, "You had better go home before you get into trouble"—to which appellant replied, "Well, if you don't like it, maybe we are going to kick your joint in and kick you out of it and take charge"; that deceased replied, "No use acting that way."

Appellant did not testify or offer any testimony. Hence proof of the appellant's guilt depends upon the testimony offered by the State. It is obvious that the fatal blow was

struck by Shupback before the appellant ever laid his hands upon the deceased. Hence the appellant's guilt depends upon whether or not he is a principal, and the court submitted the case to the jury on the theory of principals.

Our statutes provide that all persons are principals who are guilty of acting together in the commission of an offense, and when the offense is actually committed by one or more persons, but others are present and knowing the illegal intent, aid by acts or encourage by words or gestures, those actually engaged in the commission of the unlawful act; or who not being actually present keep watch so as to prevent the interruption of those engaged in committing the offense, such persons so aiding, encouraging, or keeping watch, are principal offenders, and may be prosecuted as such. To constitute one a principal offender under the foregoing article of the statute he must first be acting in the commission of the offense, or secondly, knowing the unlawful intent of some other person to commit the offense, he must have aided by acts or encouraged by words or gestures the one actually engaged in the commission of the unlawful act. Where it is sought to hold one amenable as a principal to some other person who actually committed the unlawful act and the guilty connection depends upon the presence of the accused, it is not only necessary that his presence be shown, but it must further be shown that he knew the unlawful intent of the party committing or about to commit the offense and knowing that unlawful intent he aids by acts or encourages by words or gestures in its commission. The mere presence of appellant or knowledge that an offense was about to be committed or is being committed will not constitute him a principal offender. Applying the law to the facts as we have stated them, do they show with sufficient certainty that appellant is guilty of the offense for which he has been convicted. To make him guilty he must have acted with Shupback in taking the life of the deceased. The fatal blow which caused the death of the deceased was inflicted by Shupback alone. There is no evidence that the appellant knew that Shupback intended to kill the deceased. Although it be conceded that appellant struck the deceased with his fist or a beer bottle, he did not strike him until after the fatal injury had been inflicted. Therefore in order to hold appellant as a principal it was absolutely necessary for the State to show that he knew the unlawful intent of Shupback to inflict the fatal injury and knowing this unlawful intent

he aided, abetted, or encouraged Shupback to do so. This record is absolutely barren of any testimony which shows that appellant knew that Shupback had obtained the stick with which he inflicted the fatal injury or that he was about to inflict the injury upon the deceased. Neither do we find any testimony in the record which shows that the offense was committed in pursuance of a previously formed design in which the minds of both united and concurred. Hence the testimony fails to bring the appellant within the definition of a principal as defined by statute. See Walker v. State, 29 Texas Crim. Rep., 621; Schackey v. State, 41 Texas Crim. Rep., 255; Buckley v. State, 78 Texas Crim. Rep., 378, and authorities there cited.

Being of the opinion that the conviction for murder without malice is not supported by the evidence, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.