ALBERT MCDOWELL V. THE STATE.

No. 21324.   Delivered January 8, 1941.

Rehearing Denied February 19, 1941.

The opinion states the case.

*Fred Whitaker,* of Carthage, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted for the offense of murder and given a sentence of forty years in the penitentiary. He was charged by indictment returned on the 7th day day of May, 1940, as a principal with Walter Castleberry for the murder of John Fleming on the 8th day of September, 1929.

The deceased was a constable and while at a gathering of

negroes undertook to take a pistol off of the person of Andrew Castleberry. This resulted in a shooting affray and the death of Andrew Castleberry who was a brother of Walter Castleberry. The trouble arose at a gathering at which a great number of colored people were present, yet there are but few eye witnesses and their stories are in some respects widely at variance. The appellant did not testify in his own behalf. The State relies upon the evidence of Edgar Shaw, who was sitting by the side of or near the constable during the time and in position to hear and see the things said and done.

The lapse of time between the killing and the trial is explained by the fact that appellant fled from the community and resided in California under an assumed name. For some reason the indictment was returned after his apprehension in 1940. Walter Castleberry, who fired the shot which likely would have proven fatal independent of other wounds, also disappeared and has never been apprehended and tried. Charley Thompson, a third party involved, was arrested at the time and tried in Harrison County on a change of venue soon thereafter and given a sentence of ninety nine years in the penitentiary.

The occasion caused wide comment at that time and, to some degree, has been involved in political campaigns for sheriff in the years to follow. It seemed, however, that the name of Walter Castleberry and the officer's failure to apprehend him was the principal cause of this comment and that the name of this appellant played a minor part. It is admitted that the feeling ran high at the time of the murder and that there were threats of mob violence. This caused the then district judge to transfer the Thompson case on his own motion to Harrison County for trial.

In the instant case appellant duly filed a motion for change of venue and supported the same by a number of witnesses. It was contested by the State, and the State likewise produced a number of witnesses, the effect of whose testimony is that the feeling since the date of the murder had subsided so that in their opinion a jury qualified to try the case of this appellant might now be obtained. From the record it does not appear that any great difficulty was experienced in finding jurors qualified under the law. The trial court heard this testimony and passed on it adversely to appellant. We think he was warranted in doing so under the evidence.

The principal contention in the case upon which appellant asks a reversal is that the evidence fails to connect appellant

with the murder. Upon conclusion of the testimony appellant asked for an instructed verdict. A determination of this question will also determine the appeal.

It is not necessary to review all the evidence on the subject. We will refer to sufficient of it to support the conclusion which we reach.

Edgar Shaw testified in behalf of the State that the shooting began near the church building and that a very short period of time elapsed between the commencement of the shooting and the conclusion of it at which the negro, Andrew Castleberry, and the constable, John Fleming, lay dead on the ground. The witness said:

"He (Fleming) asked him (Andrew Castleberry) to give him that gun and I didn't understand what Andrew said * * *, but he ran backwards and Mr. Fleming he went up to him and shot him. And then I heard somebody say, 'let's kill him.' That came from on the back of the church, I reckon; came from towards the back of the church, in that direction. * * * I saw Albert McDowell. He came from that way, the same way I heard somebody say, 'let's kill him.' When somebody says, 'let's kill him,' he done fell and he (appellant) went up and hit him (Fleming) with a piece of wood. Walter Castleberry shot Mr. Fleming. Mr. Fleming shot Andrew Castleberry * * * the time Walter Castleberry started to shoot him somebody hollored, 'let's kill him.' I didn't see anybody else out there other than this Albert McDowell where he came from * * * When Mr. Fleming fell Albert McDowell was hitting him with a piece of board; billet of wood; a piece of wood. I saw him hit Mr. Fleming twice. Walter Lewis stopped him. * * * He was hitting him on the head."

Again the witness testified:

"Charley Thompson commenced shooting when he turned his back and went to run. That thereafter Walter Castleberry had come up and started to shooting. Mr. Fleming made his break and Charley leveled down towards his back and shot him in the back. Charley Thompson shot him in the back. * * * It was all mighty nigh together. From the time Mr. Fleming shot Andrew until Walter had commenced shooting Mr. Fleming was not long."

Appellant has filed a very able brief in which we think correct propositions of law have been stated and supported by the authorities cited and discussed. The difficulty we have in reaching the conclusions contended for by appelant lies in the fact

that the evidence of this particular case appears to be distinguishable from that in the cases relied upon. The foregoing quoted testimony from the State's witness on the subject is sufficient alone to warrant the jury in finding that the appellant in the instant case entered spontaneously into a murderous design in response to the challenge uttered, "Let's kill him."

Walker v. State, 16 S. W. 548, is in point, but is distinguishable by the following statement found in the opinion:

"It was not shown, however, that defendant knew of his companion's intention to take the other's life, and it was not contended that his blow added anything to the fatality of the pistol wound."

From Buckley v. State, 181 S. W. 729, we quote: "Although defendant was present when one was killed by a fellow conspirator, yet, *if there was a reasonable doubt as to whether he knew of such conspirator's intent to commit an unlawful act* that might lead to such killing, or that, if present, he did not aid or encourage such conspirator, he would be guilty of no offense."

Mowery v. State, 105 S. W. (2d) 239, follows the same theory, it being stated: *"There is no evidence that the appellant knew that Shupback intended to kill the deceased * * * Therefore, in order to hold appellant as a principal it was absolutely necessary for the state to show that he knew the unlawful intent of Shupback to inflict the fatal injury and knowing this unlawful intent he aided, abetted, or encouraged Shupback to do so."*

Appellant himself bases his claim for reversal on the ground that, "the record is absolutely barren of any testimony which shows that appellant knew that Walter Castleberry or Charley Thompson was about to inflict injuries upon the deceased which would cause his death." To this we cannot agree and for that reason have reached the conclusion contrary to that contended for by appellant. The quoted testimony sustains us.

Finding no error of a material nature in the trial of the case the judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant's motion again challenges the sufficiency of the

evidence, apparently on the ground that it is not certain whether he made the remark, "Let's kill him," referring to the constable. The facts have been re-examined. Appellant and everyone else present knew that pistols were being fired, which meant killing. We do not understand that appellant's guilt turns upon the question of putting in his mouth the remark quoted. Appellant was striking deceased on the head immediately after he had been shot and was acting with those doing the shooting.

The motion for rehearing is overruled.