E. G. HAYS v. THE STATE.

No. 23853. Delivered February 25, 1948.
State's Motion for Rehearing Denied May 19, 1948.

66

GRAVES, Judge, dissenting.

*F. H. Hammond,* of Burnet, and *Alfred Petsch* of Fredericksburg, for appellant.

*Roscoe Runge,* District Attorney, of Mason, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 17 years.

Appellant was indicted for the offense of murder by the Grand Jury of Blanco County but, by agreement of counsel for both the State and defendant, the venue of the case was changed to Burnet County.

The only question presented for review is whether or not appellant, who did not inflict the fatal wound, comes within the definition of a principal as that term is defined by Art. 65, P. C., which provides as follows:

"All persons are principals who are guilty of acting together in the commission of an offense."

The solution of this question rests in the evidence. The record shows that on the afternoon of the day in question Nod Terry, Weston Hays and his wife, appellant and his lady friend left the Blue Bonnet Fishing Camp in Terry's automobile with the purpose of going to Johnson City; that after they passed the beer tavern where the unfortunate killing subsequently occurred and had crossed the river bridge, they had a flat tire. Appellant and his lady friend obtained a ride in a passing car, went to Johnson City, and engaged a mechanic to go out and repair the tire. Terry went to the beer tavern a short distance

away while Weston Hays and his wife remained in the automobile. A short time later Henry Preece, the deceased, appeared at the place where Weston Hays and his wife were seated in the car and assaulted Weston. Some of the witnesses said that he assaulted him with his fists while others testified that he assaulted him with an automobile crank; that he also abused Mrs. Hays and ran her across the highway; that during the encounter, some person came along in a car and Mrs. Hays requested the person in the passing car to intercede. This party did ask the deceased not to strike Weston any more, that he had enough. The deceased then returned to the tavern. Some time later, appellant and his lady friend returned from Johnson City and Terry also returned to the car. They then started to drive back to Marble Falls. When they arrived at the beer tavern appellant, his lady friend, and Terry wanted to stop and dance, but Weston and his wife demurred and suggested that they continue their journey to Mable Falls. However, Terry, who owned the automobile did stop and appellant, his lady friend, and Terry went into the tavern where they danced while Weston Hays and his wife remained in the car. When appellant, his lady friend, and Terry went into the tavern, appellant passed the deceased in the building, who, according to the appellant's testimony, said to him, "where is that s-- of a b---- son of yours?" to which appellant replied, "I don't know." Thereupon, the deceased said, "Well, I will find him," to which appellant replied, "You have had two fights and there aint no use of having any trouble," and walked away. After the foregoing remarks had been passed between them, appellant danced a set with his lady friend but soon noticed that the deceased had left the tavern, whereupon he went to the North door of the tavern and saw the deceased at the car assaulting Weston; that while they were engaged in the fight, appellant went to the scene of the difficulty; that as soon as he walked up, Henry Preece, the deceased, said, "You old s-- of a b----, I will kill you too."; that the deceased then knocked appellant down twice and while he was down he took his pocket knife out of his pocket, opened it, got up and struck at the deceased twice inflicting two superficial wounds, one on the hand and one on the leg; that then the deceased abandoned his assault upon appellant and made for Weston; that when he started for Weston, he, Weston fired one shot, then the deceased went to the front of the car and another shot was fired at Henry Preece, who fell to the ground mortally wounded. Appellant further testified that when he saw them fighting at the car, he went up there because he thought Weston's life was in danger; that he did not at any time have any kind or character of an agreement or understanding with Wes-

ton to kill Henry Preece or inflict any serious bodily injury upon him before Weston shot him. At the time he went up to where they were fighting, he did not have any idea that it was going to result in a killing. After the shooting, Weston Hays surrendered his pistol to the owner of the beer tavern and they then entered Terry's car and went to Marble Falls where appellant made the remark, "I was cutting hell out of the s-- of a b---- when Weston shot him." The foregoing is a summary of the salient facts proved on the trial.

If the facts bring appellant within the definition of a principal, under the charge of the court, then the case should be affirmed, otherwise it should be reversed. Now, let us analyze the facts. It must be borne in mind that on the day in question the deceased assaulted Weston Hays twice. In each instance he was the aggressor. There is not any evidence from any source that appellant and his son had agreed to kill the deceased or inflict serious bodily injury upon him, or that they were acting together with a common purpose and intent in pursuance of a previously formed design, nor did appellant prior to or at the time that the fatal shots were fired say a word to his son, nor did appellant or his son say a word or do any act to provoke a difficulty with the deceased, nor is there any evidence from which it may reasonably be inferred that they or either of them intended to bring on a difficulty with the deceased, but on the contrary, Weston and his wife did not want to stop at the tavern knowing that the deceased was there. They were in Terry's automobile over which they had no control. It was Terry, appellant and his lady friend who wanted to stop and dance which they did; that while in the tavern it was the deceased who manifested a hostile attitude by the use of indecent and insulting language. It was after the deceased had left the tavern and had gone to the car where Weston and his wife were seated and began to assault Weston that appellant, who saw the struggle from the North door of the tavern, went to intercede in behalf of his son at which time the deceased ceased his assault upon Weston and began to assault appellant who after being knocked down twice drew his pocket knife and struck at the deceased twice, inflicting minor wounds. Whereupon, the deceased ceased his attack upon the appellant and again proceeded with the assault upon Weston at which time Weston shot him. There is no evidence to show that appellant and his son acted together in the killing either by word, act, or conduct. On the contrary, neither of them became the aggressor and there is no evidence that there was any concert of action on the part of appellant and his son. Consequently, the

evidence does not bring the appellant within the category of a principal. In our opinion, the case of Mowery v. State, 132 Tex. Cr. R. 408, by analogy, sustains the opinion here expressed. See also Walker v. State, 29 Tex. App. 621.

Appellant also claims that since Weston, who actually did the killing, was convicted of murder without malice and was given a three-year suspended sentence, appellant could not be convicted of a graver offense and given a more severe penalty and he cites us to a number of cases where the doctrine under our former statute defining murder in the first and second degree and manslaughter was approved, but when the present murder statute was enacted, the degrees of murder were repealed and we now have no degree of murder. We can readily understand where one of two parties may be convicted of murder without malice and the other of murder with malice since one may act upon sudden passion arising from an adequate cause which would make him guilty of murder without malice while the other who did not would be guilty of murder with malice.

From what we have said it follows that judgment of the trial court should be reversed and the case remanded and it is so ordered.

Opinion approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State has filed a motion for rehearing, together with an exhaustive analysis of the evidence pertinent to the issue upon which reversal was based, in which the evidence in the case of Mowery v. State, 105 S. W. (2d) 239, and Taylor v. State, 179 S. W. 113, is reviewed and compared with the evidence relied on in the case now before us.

We have followed this analysis and the argument presented thereon, as well as other cases cited in behalf of the State's position, and are unable to agree that the contrasted facts so treated sufficiently distinguish the cases from the one now before us. We adhere to the belief expressed in the original opinion.

It would be difficult to state the facts in this case more clearly than is done in the original opinion. There is little conflict between the evidence introduced by the State and that by the

defendant, so far as they pertain to material issues. It may be concluded from both that appellant's son had married a sister of the deceased. The brother was much incensed about this. Feelings had run high for some days. On June 4th deceased had a birthday and started out with friends for a celebration in which they spent some two hours at a beer joint on the Pedernales River, near Johnson City. Appellant, his son Weston Hays, and the latter's wife, together with another man and woman, passed by on the way to Johnson City. A short distance beyond the place a flat tire interrupted their progress. Appellant and the woman went on to Johnson City, but Weston Hays and his wife remained at the place for a considerable time. Deceased heard they were there and went across the river to the car and assaulted Weston Hays after treating his wife, deceased's sister, quite roughly. He then returned to the dance hall and there is evidence that he had some slight wound. Weston Hays was wounded in some manner from which he bled profusely. When appellant returned to the car and the tire was repaired, the party turned back towards Marble Falls. When they reached the dance hall where the car of deceased was parked, the driver of the car, appellant, and his woman friend wanted to stop and dance. The son and his wife did not want to stop because they saw the car of deceased parked there. This is shown by the State's principal witness. The car was driven some distance beyond the dance hall and parked by the side of the road. The son and his wife remained in the car. The others went into the dance hall. As they did so the deceased approached appellant and demanded to know where his son was. The things that followed are fully detailed in the original opinion.

There is not the slightest evidence that appellant and his son had entered into any agreement whatsoever, or that either of them intended to make any kind of attack on the deceased. The son had a gun——he had it the day before. He had done some talking about it, but there is no evidence that he threatened to do anything with it, and there is no indication that he intended to use it other than that he would probably defend himself against one of the repeated attacks by deceased. There is no indication that he used the gun or tried to use it on the first attack, at the place where he was waiting for the tire repair. Appellant did not follow the deceased out of the dance hall, as is argued by the State's brief on motion for rehearing. The State's witness testified that it was some two, three to five minutes from the time the deceased made his attack on the son until appellant came out of the dance hall. There is nothing in this to indicate that appellant was acting in conjunction with

his son before he saw him engaged in combat with the deceased. The evidence shows that the deceased again treated Weston Hays' wife, his own sister, quite roughly; that he had chased her a short distance up the road; he returned to the car; went back towards her again; then came back to the car. This much time is certain to have intervened from the time the attack began until appellant started towards them. He had a right to go to the defense of his son under all of the circumstances of the case. As he did so the deceased attacked him. He knocked appellant down twice. Appellant secured his knife and cut at the deceased, inflicting only a slight wound or two, if any. The evidence in the case does not show whether the wounds which the deceased received, other than the shot, were inflicted when he first attacked Weston Hays or in the latter attack. It does not show that appellant inflicted them. Even so, he was clearly acting in the defense of himself and his son, under the State's evidence as we view it.

The State's argument summarizes the evidence in an effort to reach the conclusion that the parties had been acting together. The fact that Weston Hays did not use his gun when the first attack was made on him that afternoon is considered a circumstance. We do not so view it. There is no indication of a plan to make any attack whatsoever. To the contrary, it rather indicates a determination to endure as long as possible the abuse of the deceased. The subsequent conduct in trying to keep his father and the others from stopping at the dance place because he saw the deceased's car there, and wanting to drive on to Marble Falls, indicates his desire to avoid trouble. This circumstance would not justify the jury in reaching such conclusion as the State contends for in its argument.

Appellant went in the dance hall. Deceased approached him and asked where his son was. He refused to tell him and deceased then went out to look for him. The State argues, "It is not unreasonable to believe that this was not the conversation, but that appellant told deceased that Weston wanted him outside, or something of that kind, so that a difficulty would be immediately brought about." The jury would not be permitted to so speculate. There is no circumstance or any proof from any witness that would justify such deduction. If they took such view the evidence does not sustain them.

Argument is further presented to show that deceased only shook Weston Hays, or that they were merely scuffling. We view the evidence differently. The State's own witness tells of

the first attack and pictures insulting conduct calculated to force Weston Hays into another combat. He took Weston Hays' hat and rubbed it in his face. This took place after the State's witness had insisted that the deceased had given Weston enough and that he should quit.

After the killing appellant told a witness that he was cutting deceased while his son was shooting. This fact was told by other witnesses. The cause for it was also revealed. He was defending himself from the deceased who had knocked him down. It has no force to support a prior agreement between appellant and his son.

Other discussions are commenced with such expressions as, "It does not seen unreasonable for us to believe" that he was doing so and so. In the absence of some evidence to so indicate, we think the jury would have no right to draw such conclusions. We fail to find sufficient evidence to create a suspicion favorable to the State's contention. A careful analysis of all the evidence in the light of the argument presented by the State confirms us in the belief that it is insufficient to support the verdict.

The State's motion for rehearing is overruled.

GRAVES, Judge (dissenting).

The State has filed a motion for rehearing herein contending that there are sufficient facts to uphold the verdict of the jury; that the two cases cited in the original opinion, Mowery v. State, 132 Tex. Cr. R. 408, 105 S. W. (2d) 239, and Taylor v. State, 77 Tex. Cr. R. 376, 179 S. W. 113, are not in point; that in each case the deceased had already received the death blow before the accused entered into the difficulty.

In the present case, the facts relied upon came from two disinterested and sober witnesses who were drilling a well near the scene of the shooting. The witness, Guy Maddox, testified as follows:

"The next thing I saw was Henry Preece coming from around the front end of the beer joint. He went up to where this car was parked and pulled the lady out of the car. She got out and ran up north on the road toward Marble Falls. The girl did not run very far up the road. Then Preece came back and went to the other side of the car and pulled the boy out. By boy, I mean the young Hays boy. Preece kinda shook him a little. Then he turned him loose and started after the girl again. She turned

and ran a little but further up the road. I could not estimate how far she went up the road but it was not very far. Then Preece turned around and came back and got hold of young Hays again. He had him by the shoulder and was kinda shaking him. They were on the west side of the car.

"Then I saw Mr. Hays come out of the beer joint and walk up to where these two men were. He walked up there and took a swing at Henry Preece. Then Preece hit him and knocked him down. He did not knock him all of the way down but just kinda to his knees. Then Mr. Hays got up and took another swing or two and then he went down again. Then I heard the shot. I heard two shots fired pretty close together. There wasn't anything that occurred between the two shots. They happened right close together. After the second shot I saw Preece kinda drop his hands and run around the front of the car. He came around to the east side of the car and about middle ways he fell.

*      *      *

"I saw Weston Hays and his wife and Emmet Hays and the girl and Nod Terry drive up to the beer joint. Emmet Hays and the woman and Nod Terry got out and went in the beer joint. Just immediately after that I saw Henry Preece leave the beer joint. He came out to the car and pulled the woman out. The woman then ran up the road a little and Preece turned around and came back to the car and jerked Weston Hays out. He shook him a little and then took a few steps after the woman again. She ran down the road and Preece turned around and came back and shook Weston Hays again. Just about that time I saw Emmet Hays leave the beer joint and come up to where they were. When Emmet Hays got there he took a couple of swings at Henry Preece and then Preece knocked him down. Emmet Hays got up and took another swing at Henry Preece and was knocked down again. Just about that time the shooting started. All of these things happened in regular sequence just like I have described them and they took place in just about the length of time that it has taken you to ask me the question. I don't think it took any more time for them to happen than it has while I have been testifying about them."

Another witness, Clayton Shockley, who was also drilling this well, testified:

"The next thing I saw was Henry Preece come out of the beer joint and go up to the car. He went around on the west side of the car and was arguing with them. Then he either pulled

Weston Hays out of the car or Weston Hays got out and was scuffling around there. I do not remember exactly but some way the woman got out of the car and she was standing out in front of it. I do not know whether he pulled her out or anything about that. Then Mr. Hays came out of the beer tavern and walked up to where they were scuffling. He took a swing at Henry Preece and he either shoved or knocked him down. Then Mr. Hays regained his balance and swung again and Preece either shoved or knocked him down again. Then the other boy began shooting. There were two shots and they were pretty close together. After the shots the Preece boy ran around to the other side of the car and fell. I stayed right where I was for some time after the shooting.

*       *       *

"After they went in the beer tavern the next thing I saw was Henry Preece coming out of the joint. He walked up to where Weston Hays was and they engaged in some kind of a scuffle there. I saw the woman out in front of the car but I do not know how she got there. Then Emmet Hays came out of the beer joint and came up and got in the scuffle. There were two shots and then I saw Henry Preece fall. All of that happened in ordinary sequence and one thing right after the other."

Taking into consideration the fact that the deceased and appellant's son were in a fist fight when appellant swung at him and that deceased was cut three times: once in the hand, once in the leg, and once in the back, and that appellant soon thereafter said, "He said he was cutting hell out of the son of a bitch when Weston shot him", it seems that there was an acting together of both parties at the same time to take the life of Preece; and I am impressed with the fact that the testimony of the State, as set forth above, is sufficient upon which to show an acting together of appellant and his son in taking the life of Henry Preece.

I, therefore, dissent from the reversal of this cause on account of the insufficiency of the testimony.