140

DOMINGO MONTALBO, MAURO MONTALBO, AND LUCAS LOPEZ V. THE STATE.

No. 22215. Delivered December 9, 1942.

GRAVES, Judge, dissenting.

The opinion states the case.

*John A. Pope,* of Rio Grande City, and *Bismark Pope,* of Laredo, for appellants.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

The two Montalbos and Lopez were jointly indicted and jointly tried for murder of Eduardo Roquet. All three appellants were convicted. The punishment assessed against Mauro Montalbo was twenty-five years in the penitentiary, and ten years each against Lopez and Domingo Montalbo.

The killing occurred at Johnny Lund's drink and dance place. Martin Rodriguez was manager of the place and Roquet was a cook. The place consisted of several buildings, all connected

with one another. Drinks were sold in one of the houses referred to by the witnesses as "the saloon"; the dance hall was in another of the buildings. The evidence shows that the three appellants and some other companions came to this place bringing with them some beer and whisky. They purchased more beer and drank the beer and whisky. The state introduced in evidence the confession of each appellant, and each appellant testified as a witness.

It appears that Domingo Montalbo danced with one of the girls present, and when the dance was over he tendered her a nickel as payment for her dancing; she refused the nickel and demanded a dime which she claimed was the regular pay for a dance. An argument ensued. At this point Rodriguez appeared and insisted that Domingo pay the girl a dime. Words followed and a fight started between Domingo and Rodriguez. Mauro Montalbo, a brother of Domingo, entered the fight and caught Rodriguez by the hair while Domingo and Lopez were striking him with their fists and beer bottles. Rodriguez broke away from them, and went to the saloon where he secured a 410 gauge shotgun, and was returning with it to the dance hall. Mauro Montalbo met him at or near the door and was trying to take the gun away from Rodriguez. Lopez came to Mauro's aid and Lopez got the gun away from Rodriguez and struck him on the head with it, and Rodriguez fell to the ground. He regained his feet and ran away. About the time Lopez got the gun away from Rodriguez Roquet appeared on the scene for the first time. He attempted to take the gun from Lopez, who struck Roquet on the head with the gun, knocking him down, and then struck him again after he was down, at which time Domingo struck him on the head with a beer bottle, breaking the bottle. While Roquet was on the ground Mauro got on him and cut him with a pocket knife on both sides of his face or throat. Roquet died from the knife wounds. The doctor testified that the knife wounds were "deep, penetrating wounds" from which deceased bled to death. It is evident from the doctor's testimony that the wounds inflicted on Roquet by striking with the gun and beer bottles in no way contributed to cause his death. The doctor says, "He had a few small bruises, but they were not of any consequence whatsoever. He had some bruises on his head but they were very slight bruises—very slight."

There are no bills of exception in the record. In their brief counsel for appellants contend that the killing of Roquet resulted from a drunken brawl entered into by all parties, and that there is lacking any evidence of malice or intent to kill on the part of any of the appellants, and that especially is this true with reference to appellants Domingo Montalbo and Lucas Lopez.

We believe the contention is without support insofar as it concerns the conviction of Mauro Montalbo.

We now consider the contention as it relates to Lopez and Domingo Montalbo under the undisputed evidence, and the rules of law controlling.

There is no hint in the evidence even that any previously formed design existed among the three appellants to kill Roquet or Rodriguez or any other person when they went to the scene of the difficulty. The evidence is positive that Mauro Montalbo actually did the killing. The only way Lopez and Domingo could possibly be guilty as principals is under the provision of Art. 66 of our Penal Code which denounces one as a principal who is present when another commits an offense, and knowing the unlawful intent of such other aids him by acts, or encourages him by words or gestures in the commission of the unlawful act. The trial court recognized this, and instructed the jury that before Lopez and Domingo could be convicted as principals in the murder of Roquet the jury must find beyond a reasonable doubt that Mauro Montalbo with malice aforethought killed Roquet with a knife, and must further find beyond a reasonable doubt that Domingo and Lopez *were present* and *knowing the unlawful intent* of Mauro,—which in this case was the intent to kill Roquet with a knife—aided him by acts or encouraged him by words or gestures in the commission of the offense.

In making out its case in chief the State introduced the confessions of Domingo Montalbo and Lopez. Both confessions embraced certain exculpatory statements which, if true, would have absolved each of said appellants of guilt as principals in the unlawful intent of Mauro to kill Roquet, unless said exculpatory statements were shown to be untrue by other evidence in the case. For statement of the general rule regarding exculpatory statements put in evidence by the State see 18 Tex.

Jur. p. 27, Sec. 13; Branch's Ann. Tex. P. C., p. 44; Sec. 73; Otts v. State, 135 Tex. Cr. R. 28, 116 S. W. (2d) 1084, in which many cases on the subject are reviewed, especially with reference to the necessity of instructions to the jury upon the subject. The careful trial judge in the present case did instruct the jury that the State was bound by the statements in the confessions which it had introduced, and that if they contained statements which would exculpate the one making them of the crime committed, such appellant making such exculpatory statements should be acquitted, unless the exculpatory statement had been shown by the evidence to be untrue. There is no fault in the instructions, but it occurs to us that the action of the jury in finding Domingo and Lopez to have been guilty was in the face of said instructions.

In Domingo's confession he said as soon as he had struck Roquet with the beer bottle after Lopez had knocked him down with the gun, "I moved away from there, and I went to where our truck was, and I did not return to the scene of the fighting." Domingo testified as a witness in his own behalf, but the State was not aided thereby in showing the untruth of the quoted statement in the confession. As a witness before the jury Domingo upon the same point testified, "I hit him (Roquet) with a bottle, and then I ran and *I do not know what else they did with Mauro or Mauro with them.* From there I went to the truck. *I did not see anything else happen.*"

In the confession of Lopez introduced by the State is the following statement, "Roquet fell to the ground, and as he fell I hit him again with the shotgun on the head. I then left and I went and hid the shotgun under the house. After I had hid the gun I went to the truck in which we had gone to this place, and *I did not see any more of what was happening or what happened.*" Lopez also testified in his own behalf, but the State was not aided thereby in showing his confession to be false. His evidence on the point involved follows: "When I saw him (Roquet) drop then I turned around and threw the gun under the saloon. And then I went to the pick-up. I do not know what happened after I hit this party and turned and threw the gun away; I did not see anything else that happened." No other witness called by the State threw any light on the alleged participation of Domingo and Lopez with Mauro in the stabbing and killing of Roquet. Rodriguez ran away from the scene after the shotgun was taken away from him, and he

says Roquet had not become involved in the difficulty at the time he (Rodriguez) left. A young man named Nayarga saw the parties disarm Rodriguez of the shotgun, and after he ran away the witness picked up from the ground a pistol which he delivered to his father. The witness saw no part of the difficulty in which Roquet was engaged. It developed that the pistol in question belonged to Rodriguez, and it was after he lost it that he went after the shotgun. None of the appellants claim to have seen the pistol in Rodriguez's possession, and he apparently made no effort to use it. The two girls who were present in the dance hall when the argument started over the pay were in attendance at court but were not called as witnesses, explained perhaps by Rodriguez's statement that they went to the saloon and remained there during the trouble.

From what has been said it appears that neither Lopez nor Domingo used any serious violence towards Roquet, and seems to negative the idea that either of them had any knowledge of an unlawful intent on Mauro's part to kill Roquet with a knife. Indeed, according to the statements in the confession of each of them, they had nothing whatever to do with Mauro's act in the premises, but that each of them had abandoned whatever assault they had made upon Roquet, and had gone to their truck. With the record in this condition we think the evidence fails to show that the exculpatory statements of Domingo and Lopez were untrue. Therefore, as to them the judgment of conviction cannot be permitted to stand under the rules of law controlling.

The confession of Mauro contains statements upon which the jury could properly predicate a conviction of him for a killing upon malice.

The judgment is affirmed as to Mauro Montalbo, and reversed and remanded as to Domingo Montalbo and Lucas Lopez.

GRAVES, Judge, dissents.

BEAUCHAMP, Judge (Concurring).

I am concurring in the opinion of Presiding Judge Hawkins in affirming the case as to Mauro Montalbo and reversing the same as to Domingo Montalbo and Lucas Lopez upon the fur-

ther finding that the last two attempted no serious violence against Roquet. It appears to me that even though they had made a violent assault, they had no intention to kill him— otherwise they would have completed that which they were in position to do. Each of them seems to have completed his undertaking and left it at that, abandoning the fight before Mauro Montalbo attempted to inflict the fatal wound. There is no evidence of any previous design on the part of all of them. The conflict arose without any chance for planned action, past or present, or joint understanding about the end to be accomplished. If Domingo Montalbo and Lucas Lopez had continued to the end such acts as would encourage Mauro Montalbo to inflict the fatal wound, they would be guilty as principals. Anyone who enters into such a conflict should be permitted to withdraw from it provided he does so upon discovering the purpose and intention of his associates not theretofore known to him. The evidence in the present case appears to be clear that they completed the things which they desired to do and ceased further fighting before they had inflicted wounds that might be fatal, or even serious. There is nothing in the evidence to show that their actions encouraged Mauro Montalbo to stab Roquet. We find no evidence of word spoken, or gesture made, or any necessity arising which would suggest encouragement or require Mauro Montalbo to inflict the wounds which produced the death of Roquet.

I concur in the opinion reversing the case as to Domingo Montalbo and Lucas Lopez.

GRAVES, Judge, (dissenting).

The appellants were charged with the unlawful killing of Eduardo Roquet, and upon a conviction thereof Domingo Montalbo and Lucas Lopez were each given ten years in the penitentiary, and Mauro Montalbo was given twenty-five years in the penitentiary.

The facts show that one Martin Rodriguez ran a drink and dance place in Starr County, where beer was sold and dancing could be done. There were some small buildings there located, all seeming to be connected with each other, the drinks being sold in what witnesses called "the saloon," and dancing being done in an adjoining building. There is some contradiction in the testimony as to the beginning of the trouble, the manager

of this business claiming same started because he tried to close the "saloon" part of the business at about 3 o'clock in the morning, and the three appellants refused to allow him to do so; and the appellants and other witnesses claiming the trouble started at the dance hall. Regardless of whose version was correct, the State's testimony shows that at the time in question all three appellants and probably two other companions came to this establishment of Rodriguez, bringing with them six bottles of beer and some whisky. They also purchased six bottles more and drank that and the whisky. Appellant Domingo Montalbo was dancing with a girl in the dance hall, and when the dance was finished he tendered her a nickle as payment for her dancing with him; she declined this nickel and demanded a dime as her regular pay for dances. Domingo refused to pay more, and some argument ensued. The manager, Martin Rodriguez, appeared and told Domingo to pay the girl the dime; some words ensued, and a difficulty occurred between Domingo and Rodriguez. Mauro Montalbo, the brother of Domingo, interfered in this difficulty, and Rodriguez was worsted in the encounter, being beaten with fists and a beer bottle thrown by appellant Lopez. Rodriguez then retired from the dance hall and entered the "saloon" portion of this establishment, and soon reappeared with a 410 gauge shotgun. Appellant Lucas Lopez then again entered the controversy, and while the other two appellants were fighting Rodriguez and trying to take the gun away from him, Lopez ran in and did take the gun from Rodriguez, and hit him over the head with it, and Rodriguez fell. When this happened, Eduardo Roquet, the deceased, who was a cook at this establishment, came up and grasped the gun then held by appellant Lopez, and as he did so Lopez struck the deceased on the head and knocked him down; Lopez then hit him again as he lay on the ground, and Lopez then claims he left the scene. Appellant Domingo Montalbo then came in, and while the deceased still lay on the ground from the effects of the blows with the shotgun, he struck the deceased over the head with a beer bottle hard enough to break the bottle, and he then also claims to have moved away from such spot. Appellant Mauro Montalbo, after his brother had hit the deceased with the beer bottle, and while deceased was on the ground, got on top of the deceased and cut him with his pocket knife on both sides of the face and throat, from which injuries the deceased soon died. This summary of the facts is taken from the statements of the appellants, each made be-

fore the county attorney of Starr County, about ten days after the occurrence which is the subject of inquiry herein.

There are no bills of exceptions in the record. Appellants, in their brief, contend that this was but a drunken brawl or fight entered into by all parties, and there was an absence of any malice or intent to kill upon the part of appellant. That especially. is there none such upon the part of the two appellants other than Mauro Montalbo.

The stereotyped definition of malice, being evidenced by a heart regardless of social duty and fatally bent on mischief, is in application usually deduced from such acts done or words spoken. It seldom evidences itself otherwise, and is often hard to describe. Conspiracies as well as previously formed designs are usually only proven by an observation of the act complained of. Regardless, however, of any conspiracy or previously formed design, if two or more parties act together in the commission of an offense, such persons are principals. Art. 65, P. C., says:

"All persons are principals who are guilty of acting together in the commission of an offense."

In our opinion, these three appellants came to the drink and dance place together, they drank together, they were acting together in the disturbance at the saloon; again at the dance hall; they were acting together in the trouble with Rodriguez, the manager of these places; they were together and acting together at the first difficulty with Rodriguez, and again together upon the second difficulty with Rodriguez, each performing his separate part, and again when the deceased came upon the scene they continued their acting together, one striking the deceased with the gun and knocking him to the floor, and again striking him; another coming in and striking deceased with a beer bottle, breaking it, and at this time the third person set upon the recumbent deceased and cut him about the face and throat, from which latter wounds he soon expired. These three then got back together in the same truck that they had arrived in, and went back to their respective homes.

It appears to us that this was a joint and common attack made by all three appellants, each acting his separate part.

That malice can be formed in but an instant is now well settled, and such can be inferred from acts done as well as words spoken, if such there be. That appellants intended some serious injury can also be deduced from the first stroke with the gun by Lopez; again from a second stroke therewith after the deceased had fallen. While in this condition, and while deceased was thus helpless on the ground, appellant Domingo Montalbo struck him with a beer bottle hard enough to break the same, at which time appellant Mauro Contalbo came in with his knife and finished the job. Such a concert of acts upon their part seems to us to evidence not only their malice but that each knew their common intent, and each performed a part in this tragedy.

The trial court gave a comprehensive charge on principals, on defense of another, on self-defense, on defense of any co-defendant, on murder with and without malice, on the confessions of each, and limiting the same only as to the person making same, denominating each appellant as an accomplice in so far as his co-defendant was concerned, demanding corroboration of a confession as to guilt, requiring disproof by the State of any exculpatory statements contained in such confessions, etc.

It is shown that the truck in which these three appellants came was parked near by the dance hall, and that this killing occurred outside and near the hall. I think that Lopez, having performed his portion of the offense by knocking Roquet down, and again striking him, had performed his part of the tragedy. Again Domingo, evidently not satisfied with Lopez's job, ran in and struck the deceased and retired to the truck; then Mauro Montalbo with his knife came in and finished the job initiated by and rendered much easier by the strokes of the two other appellants. This was the third difficulty had by these three appellants acting in concert with each other, and I think they were all three principals in the unfortunate death of Roquet.

It is my opinion that the exculpatory statements, relative to Lopez and Domingo striking Roquet and then standing aside, are not sufficient to exculpate them. They merely show that appellants Lopez and Domingo Montalbo had completed their portion of this assault, and merely retired to the truck but a short distance away, and after awaiting the final conclusion

of this one-sided struggle, all three parties left together in the same vehicle in which they came. The mere fact that they knocked Roquet down and then stood aside, would not mean that they were not principals in this death, nor participants in a previously formed design, but their concert of action would strongly indicate an existing conspiracy to assault Roquet, and, if necessary, to take his life. Undoubtedly all three appellants had the same design at least in the beginning, and that was to assault Roquet, and each did assault him at practically the same time and at the same place, and under Art. 1139, P. C., each were presumed to intend to injure him. How greatly Lopez intended to injure Roquet is not shown, but he did knock him down; how greatly Domingo intended to injure Roquet is not shown, but he at least kept him on the ground until his brother Mauro could come in and cut his throat.

We held in the case of Monday v. State, 90 Tex. Cr. R. 8, 232 S. W. 831, that "One who knowingly engages in common with others in an unlawful enterprise, having for its object the death or serious bodily injury of another, is guilty of such crime whether it is intended that his own hand or that of another should strike the fatal blow."

The facts convince me that these three men acted with a common design the night Roquet lost his life, and that each was responsible for the acts of the other when done in furtherance of such design.

I think the judgment should be affirmed as to all three appellants, and therefore respectfully enter my dissent herein.