ALFREDO FLORES V. THE STATE.

No. 22534. Delivered June 23, 1943.

The opinion states the case.

*Chas. Owen* and *George Rodriguez,* both of El Paso, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Luis Alfonso Medina, Enrique Mendez and Alfredo Flores (appellant) were jointly indicted for the murder of Allen Simmons. Medina and Mendez were each 16 years old. They were disposed of under the juvenile law. Appellant, who was 17 years old, was alone upon trial, which resulted in his conviction with punishment assessed at 25 years in the penitentiary.

The facts reveal a most tragic and unfortunate incident.

Simmons, 21 years old, was a corporal in the United States Army. On Saturday night of January 16, 1943, he and his wife had gone to a picture show. As they were returning home they encountered a number of boys on a street corner. The story related by Mrs. Simmons in substance follows: One of the boys—Medina—said to Mrs. Simmons, "Hi Baby," and whistled to her. Simmons told Medina that the lady was his wife and that he resented such a remark. Medina said she was not Simmons' wife, but was a Mexican. Simmons again said she was his wife, whereupon Medina struck Simmons with his fist. After Medina struck Simmons the second time the latter, who was unarmed, struck back. Appellant was somewhat between Medina and Simmons. He had in his hand a small pull chain used to flush a commode. He had done nothing, nor said anything to Mrs. Simmons until after Simmons struck back at Medina. At this point Mrs. Simmons said appellant struck her husband with the chain, and as it appeared to her, all the boys began fighting her husband. The fight shifted down the street some distance. Simmons got back to the sidewalk and slumped down. His face was bloody and he was covered with blood which was dripping from his clothes. While Simmons was in that condition appellant came back and again struck Simmons with the chain. During the fight Mrs. Simmons saw no one using a knife. Simmons was taken to the army hospital and an army surgeon described the wounds as a stab wound in the back which penetrated the lungs, and several knife cuts in the face. There also were some bruises

or small lacerations on the face such as could have been made with the chain. These, however, were inconsequential, and in no way contributed to the death of Simmons, which occurred on Monday, January 18, as a result of the knife wounds.

Appellant's version of the affair was substantially as follows: He did not hear the remark made by Medina to Mrs. Simmons, but at the time was talking to another boy and the first he knew of any threatened trouble was when he heard Medina using "ugly" language to Simmons. Appellant stepped between Medina and Simmons to prevent trouble, but Medina either pushed appellant aside or stepped around him and struck Simmons with his (Medina's) fist. Simmons struck appellant, whereupon appellant in self-defense struck Simmons with the chain which he had in his hand and had been twirling or play·ing with it. Appellant asserted that only he, Medina and Mendez engaged in the fight with Simmons. He knew Medina did not have a knife, and was not aware that Simmons had been cut until after appellant's arrest, and saw no knife used during the fight. Appellant also claimed that he abandoned the fight after he struck Simmons with the chain at the beginning of it and went to the street corner where he remained until he was taken home. He denied having struck Simmons after he had been cut and was slumped over on the sidewalk, and claims that Simmons must have been cut after appellant abandoned the difficulty.

In the investigation by officers it appears that they first learned that Medina was one of the parties engaged in the fight with Simmons. Upon being questioned by the officers Medina told them Mendez was the one who had the knife during the fight. When confronted with Medina, Mendez denied having a knife. The officers then went to appellant who admitted having had the small chain, went and got it for the officers, and also told them that Mendez was the one who had the knife. The officers then confronted Mendez with both appellant and Medina, whereupon Mendez admitted having had the knife and done the cutting. He told the officers he had given the knife to another boy. As a result of this information the knife was traced, recovered and introduced in evidence.

It being conclusively shown that Mendez actually did the killing the court in his instructions made appellant's guilt as a principal to depend on his presence when Mendez cut Simmons, and with knowledge of the unlawful intent of Mendez that appellant aided him by acts in the killing. We think knowl-

edge on appellant's part of the unlawful intent of Mendez to kill Simmons, under the facts here present, turns upon the point as to whether appellant had knowledge that Mendez had and was using a knife during the fight. It will be remembered that appellant upon the trial testified that he had no knowledge that a knife was used by anybody during the fight, and did not know Simmons had been cut until he (appellant) had been arrested. There is no suggestion that appellant had seen either Medina or Mendez from the time of the fight until appellant was questioned by the officers and had learned from then or anyone else up to that time that Simmons had been cut, yet immediately upon being questioned by the officers appellant informed them that Mendez was the one who had the knife.

Appellant insists that the evidence is insufficient to sustain his conviction as a principal. He cites primarily as supporting his contention the recent case of Montalbo v. State, 166 S. W. (2d) 694. In that case the State had introduced the confessions of the two parties as to whom the judgment was reversed, and was confronted with exculpatory statements which the State could not disprove. Such is not the case here. On the question of abandoning the difficulty raised by appellant's evidence—but directly contradicted by Mrs. Simmons—the court in substance instructed the jury that if appellant was present with Medina and Mendez but did nothing to provoke the difficulty, and that after the difficulty started he was struck by Simmons and thereupon struck Simmons with a chain, but then withdrew from the fight and did not further participate in it, and did not aid or abet Medina or Mendez in any design on their part to stab Simmons with a knife he would not be guilty of murder.

The court seems to have given appellant the benefit of a charge upon every defensive phase raised by the evidence. He instructed in substance that if the jury had a reasonable doubt as to whether appellant aided by his acts anyone in stabbing Simmons they should acquit appellant; or if they had a reasonable doubt as to whether appellant knew of the unlawful intent of anyone in cutting or stabbing Simmons to acquit appellant.

This very unfortunate killing seems to have resulted from too much drinking of intoxicating liquors by appellant and his companions,—mere boys.

The judgment is affirmed.