**Israel MORALES, Brijido Pena and Juan Morales, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 43357.**

Court of Criminal Appeals of Texas.
Dec. 31, 1970.

On Rehearings March 24, 1971.

Second Rehearing Denied May 19, 1971.

Pena, McDonald & Gutierrez, by L. Aron Pena, Edinburg, for appellants.

Oscar B. McInnis, Dist. Atty., Edinburg, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from convictions in a joint trial for murder. The punishments were assessed by the jury with Israel Morales receiving thirty years, Brijido Pena, twenty years and Juan Morales, ten years.

The facts are undisputed that Israel Morales killed Juan Ayala by stabbing him with a knife. It is contended that the evidence is insufficient to show that Brijido Pena and Juan Morales were principals and that the murder was with malice.

The record reflects that the appellants Israel and Juan Morales are brothers, and they with another brother Esequiel Morales and the appellant Brijido Pena were riding together in an automobile around Weslaco. At approximately 7:30 p. m., some thirty minutes before the killing they drove to a corner where three boys were singing some Spanish songs and made some remarks in an apparent attempt to provoke a fight. When the singers did not take offense, the appellants drove away.

At approximately 8:00 p. m., Juan Ayala (the deceased), an eighteen-year-old boy, was standing in a street talking to Maricela Rodriquez, his fourteen-year-old girlfriend, and her thirteen-year-old sister, Elma, when appellants drove by and yelled something at Ayala and the girls. Some ten minutes later they approached again and one of them yelled, "Hey, you with the yellow shirttail," to Maricela who was wearing a yellow shirt. Appellants then drove down the street and two of them got out and walked with two other girls for some six blocks.

Later the appellants returned to Juan Ayala and the Rodriquez girls, and one of the occupants of the car stated, "You have too many girls," and all of them started to alight from the automobile. Ayala said, "Look, you guys, this is my girlfriend and this is my sister." One of the appellants said, "I don't care," and the three of them started an unprovoked attack upon Ayala. Brijido Pena kicked and Juan Morales hit Ayala with his fists. Israel Morales stabbed Ayala with a fishing knife which had a three and a half inch blade, causing a puncture in the right wrist and one in the heart from which he died.[1]

Maricela went to call the police and the appellants fled.

The officers did not learn the identity of the appellants until several days later. Appellants' automobile in which the group had been riding was found in Reynosa, Tamps., Mexico, where it was being prepared to be painted another color.

Israel Morales testified that he stabbed Ayala with the fishing knife. The other

---

1. The fourth occupant, Esequiel Morales, got out of the car but did not take part in the assault. He was not tried.

appellants did not testify. Wives of two of the appellants testified at the penalty stage of the trial that their husbands were good providers and had not been convicted of other offenses.

■ In the first ground of error, it is contended that the trial court erred in overruling the motions of Brijido Pena and Juan Morales for a severance to be tried separately from Israel Morales. Each alleged that a joint trial would be extremely prejudicial, because the defenses would be conflicting, and that confessions made by each would, if admitted, be prejudicial. It was also alleged that the actions of Israel Morales were independent of the others, and that the degree of guilt, if any, of the defendants would be diverse.

Article 36.09, Vernon's Ann.C.C.P., provides:

"Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the State; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants."

No statutory provision was violated because of the joint trial. No previous conviction against any of the appellants was offered in evidence. The allegation that their defenses were conflicting was not borne out by the record. The question of whether Israel Morales was acting independently of the others was a fact issue submitted to the jury. The jury found all three guilty.

The appellant Israel Morales testified that he killed Juan Ayala with the knife and apparently attempted to take all the blame for the killing.

The grounds for severance relied upon were addressed to the sound discretion of the trial judge. Thornton v. State, Tex. Cr.App., 451 S.W.2d 898.

No abuse of discretion has been shown. The first ground of error is overruled.

■ In the second ground of error, complaint is made that the court refused to have a separate hearing before admitting into evidence oral confessions of the appellants.

No confession of either of the appellants was introduced or offered into evidence over objection.

The following testimony was introduced without objection. An officer went to the home of Israel Morales and, upon finding that he was not there, stated that A. C. Gonzales, Chief of the Edinburg Police Department, wanted to talk to Israel. Sometime later Israel and Brijido Pena went to see Chief Gonzales. Gonzales told Israel that he was checking on the car about which he had received some information. Israel told Officer Gonzales that he knew what he was talking about and that he was in the fight at Weslaco. Officer Gonzales told him not to say anything else and advised Israel about his right to remain silent and right to counsel by reading from a card. Israel said he understood his rights and then told the officer, "We did it," and when asked what he meant he said, "The boy outside and me."

Officer Gonzales testified that he also warned Brijido Pena. A justice of the peace testified that he also warned these two appellants about their rights.

No request for a hearing on the voluntariness of any confession was made until after the above testimony was introduced.[2]

It appears from the record that an officer found the knife as a result of a conversation with Israel Morales but no statement of Israel Morales was introduced.

■ If the court erred in admitting the testimony about the officer finding the knife, it was made harmless when Israel Morales testified that he stabbed and killed Ayala with the knife and that he and the others left, and he threw the knife into a canal (where it was found by the officers). He also testified that Pena tried to stop him from stabbing Ayala and that Juan Morales did not get out of the car. No objection to any of this testimony was made and nothing is presented for review. The second ground of error is overruled.

■ Complaint is made in the third ground of error that the court erred in charging the jury on the law of principals. It is contended that the court assumed a common plan or design in his instructions. Upon the law of principals, the court charged the jury as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present, and, knowing the unlawful intent, aid by acts, or encourage by words and gestures, those actually engaged in the commission of the unlawful act, such persons so aiding or encouraging are principal offenders and may be prosecuted as such.

"You are further instructed that all persons who advise or agree to the commission of an offense and who are present when the same is committed are principal offenders whether such persons aid or not in the illegal act. Mere presence alone does not constitute one a principal.

"When two or more persons agree to commit an unlawful act, each is responsible as a principal, if present, for everything done by those who have entered into such common design as one of its probable and natural consequences and which might have been and should have been contemplated would result from the execution of the original design even though it was not intended as a part of the common plan.

V.

"Now if you find from the evidence beyond a reasonable doubt that ISRAEL MORALES and BRIJIDO PENA entered into a common plan and design to assault Juan Ayala and that in the execution or attempted execution of such assault, if any, ISRAEL MORALES on or about the 27th day of February, A. D. 1969, in the County of Hidalgo and State of Texas, voluntarily and with malice aforethought killed Juan Ayala by cutting and stabbing him with a knife, and that the Defendant BRIJIDO PENA was then and there present and acting together with the said ISRAEL MORALES in the execution or attempted execution of such assault, if any, and that the death of the said Juan Ayala followed immediately in the execution of such common design, if any, as one of its natural and probable consequences and the said death of Juan Ayala might have been and should have been foreseen by the said Defendant BRIJIDO PENA as one of the natural and probable consequences which would result from the

2. It should be noted that the rules concerning the voluntariness apply to oral as well as written confessions. Lee v. State, Tex.Cr.App., 428 S.W.2d 328. When a question of voluntariness is raised a hearing should be held outside the presence of the jury and the court should find as a matter of fact and as a matter of law that an accused has been properly warned and that the confession is voluntary before it is admitted into evidence before the jury. Lopez v. State, Tex. Cr.App., 384 S.W.2d 345.

execution of said common design, if any, you will find the Defendant BRIJIDO PENA guilty of murder with malice aforethought.

"You are further instructed that if you find the foregoing facts beyond a reasonable doubt except that you find from the evidence, or have a reasonable doubt thereof, that in cutting and stabbing Juan Ayala the said ISRAEL MORALES was acting outside of the common design of ISRAEL MORALES and BRIJIDO PENA, and that BRIJIDO PENA had no knowledge of the intent of ISRAEL MORALES and had no complicity in the said cutting and stabbing, and that said killing was not a natural and probable consequence of the common design of ISRAEL MORALES and BRIJIDO PENA, then you will find the Defendant BRIJIDO PENA not guilty of murder with malice aforethought."

The same charge was given concerning Juan Morales.

No written objection to the court's charge as required by Article 36.14, V.A.C.C.P., appears in the record. Oral objections dictated to the court reporter appear in the transcription of the court reporter's notes. This Court has held in many cases that where an oral objection to the charge is only dictated to the court reporter, nothing is presented for review. Cole v. State, Tex.Cr.App., 458 S.W.2d 195; Thayer v. State, Tex.Cr.App., 452 S.W.2d 496, and Seefurth v. State, Tex.Cr.App., 422 S.W. 2d 931.

Appellant further contends that his requested charges numbered II, III and IV should have been given. The record does not show that these requested charges were presented to the court prior to the reading of the charge to the jury. The purpose of Articles 36.14 and 36.15, V.A.C.C.P., is to enable the trial judge to know in what respect a defendant regards a charge to be defective and to afford the judge an opportunity to make corrections before reading the charge to the jury.

Even if the objections or the special requested charges had been properly presented to the trial judge and had been overruled, no error would be shown. The third ground of error is overruled.

Complaint is made in the fourth ground of error that the court misdirected the jury on the "uniformity of guilt or innocence of all defendants."

The record reflects that after the jury retired to deliberate at the guilt or innocence stage of the trial, they sent the following note which, omitting the formal parts, read as follows:

"* * * Some of the jurors would like to know if it is possible to find one or more of the Defendants guilty of murder with malice and the others without malice. * * *"

The jury was brought into the courtroom and the court gave the following written answer:

"Ladies and gentlemen of the jury, the answer to your question is in the negative."

Appellant verbally objected that the answer should have been "Follow the charge of the court." This answer is substantially the same instruction already given in the court's charge.

Assuming that such objection is sufficient, it appears that the instruction of the trial court was correct. In the charge to the jury, the guilt of Pena, and Juan Morales was dependent upon their being found to have acted with Israel Morales under the law of principals. There is no contention or proof that Pena or Juan Morales actually struck the death blow. It follows that neither could be guilty of any offense other than that committed by Israel Morales. If he was guilty of murder with malice, and they were found to be principals to the offense, then they were also guilty of murder with malice. If Israel Morales had been found guilty of murder without malice, then the other two could

not have been found guilty of murder with malice under the law of principals. If all of them were to be found guilty there could have been no diversity in the degree of guilt. Those whose guilt depended upon their being principals would be guilty of the offense the jury found that Israel Morales had committed.

The fourth ground of error is overruled.

■ In the fifth ground of error, it is contended that the court should have permitted individual voir dire examination of the jury panel. Appellant recognizes that only in capital cases where the State has made it known it will seek the death penalty does a defendant have the right to a separate examination of each juror under Article 35.17–1, V.A.C.C.P., and Moore v. State, Tex.Cr.App., 424 S.W.2d 443.

The contention that an abuse of discretion has been shown is overruled and this ground of error is overruled.

In the sixth ground of error, it is contended that the court committed fundamental error in participating in questioning the jury panel on the voir dire examination.

No objection was made to the court's examination of the panel. The questions and explanations by the court complained of have been examined and they were authorized. Enriquez v. State, Tex.Cr.App., 429 S.W.2d 141, and Ash v. State, Tex. Cr.App., 420 S.W.2d 703.

■ In ground of error number seven, complaint is made that the court permitted the State to use witnesses whose names had not been furnished the appellants.

The testimony of the district attorney shows that a list of the names of all the witnesses known to him were furnished counsel for appellants. He testified that two of the witnesses named were not available and the names of the two other witnesses were not known to him until the morning they testified.

No abuse of discretion on the part of the trial court or error has been shown. See Bradley v. State, Tex.Cr.App., 450 S.W.2d 847.

■ Complaint is made in the eighth ground of error that the court erred in permitting the district attorney at the start of the trial to identify the appellants in the presence of the State's witnesses during the questioning of the jury. The prosecutor asked the prospective jurors if they were acquainted with the appellants.

In a somewhat similar situation in Moore v. State, Tex.Cr.App., 424 S.W.2d 443, this Court said:

"We know of no law which prohibits a court from requiring that a defendant sit at the counsel table with his attorney during the trial. Nor do we know of any law which prohibits state's counsel from pointing to a defendant in the courtroom and referring to his physical appearance in the presence of witnesses * * *. The motion is wholly without merit, * * *."

The eighth ground of error is overruled.

Lastly, it is contended that the evidence is insufficient and the court erred in refusing to dismiss the charges against Brijido Pena and Juan Morales.

The evidence heretofore set out shows that the three appellants participated in a joint attack upon the deceased. The court instructed the jury to acquit Pena and Juan Morales if they found that they did not know that Israel Morales intended to kill the deceased.

There was sufficient evidence for the jury to conclude that Pena and Juan Morales were guilty as principals. See Martinez v. State, 142 Tex.Cr.R. 313, 152 S.W. 2d 369. See Brown v. State, 146 Tex.Cr.R. 602, 177 S.W.2d 64; Brothers v. State, 167 Tex.Cr.R. 521, 321 S.W.2d 311; Harris v.

State, Tex.Cr.App., 370 S.W.2d 886, and 4 Branch's Ann.P.C.2d, Section 2242, p. 601.

There being no reversible error, the judgments are affirmed.

## ON APPELLANTS' MOTION FOR REHEARING

MORRISON, Judge.

We first consider appellant Israel Morales's motion for rehearing, having concluded that we must examine each appellant's motion for rehearing separately.

When Israel took the stand, and admitted that he stabbed the deceased he testified that Brijido had not been involved in the fight, except to attempt to separate him from the deceased. He specifically denied that Brijido had kicked the deceased.

On cross-examination, the prosecutor asked Israel if he remembered saying in a prior written statement, "I kicked the boy and so did Brijido." Israel replied that he was nervous when he made the statement, and that he did not know what he had said. No objection was made to the cross-examination.

On redirect examination, Israel's attorney introduced his entire written confession, which was consistent with appellant's testimony, with the exception of the statement about Brijido.

■ When appellant's counsel introduced his confession, he waived any complaints that he might have regarding the voluntariness of said confession. The only apparent reason for introducing the confession was to bolster the appellant's credibility as the confession supported his testimony in all respects except for the collateral matter used for impeachment.

■ Appellant Israel contends that his introduction of the written confession was required by the State's use of that confession to impeach his testimony. He contends that such use was improper, because

the State had not adequately shown that Israel had been given all the Miranda warnings and affirmatively waived each and every right guaranteed to him under Miranda. He does not contend that his confession was coerced or involuntary.

In Harris v. New York (February 24, 1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1, the United States Supreme Court held that a confession not admissible as direct evidence under the Miranda holding was admissible to impeach the testimony of the appellant.

Under the holding in Harris v. New York, supra, we need not decide whether the warnings given to appellant Israel met all the requirements of Miranda. Portions of this confession were properly admitted to impeach his testimony, and no error has thus been shown as to Israel Morales.

In consideration of all the evidence in this case, including an eye-witness's identification of Israel Morales as the murderer, we cannot hold that the failure of the trial court to hold a hearing outside the presence of the jury on the voluntariness of Israel's confession was reversible error. His motion for rehearing is overruled.

■ We now consider the motion for rehearing of appellant Brijido Pena.

The unfortunate fact about this case, which distinguishes it from all others that have come to our attention, is that one lawyer represented all three appellants. He repeatedly requested that a hearing be held out of the presence of the jury on the voluntariness of each of the appellants' confessions. His objections and requests are found on five pages of the record. The following is an example:

"If the Court please, may we approach the bench. I think at this time—I think being that the knife may have been located from information received from the Defendant, we are going to object to any further testimony until we have a separate hearing to see if any voluntary

statements were made to see if they were truly voluntary."

At another place, counsel stated, "No, we have asked for an independent hearing." Still later, he said, "If the Court please, I want the record to show that we have asked for a separate hearing on the admissibility of the confessions which I assume the court is denying to us at this time."

Not one word from the appellant Brijido had been heard by the jury before these repeated requests were made and denied. After they were denied, Chief Gonzales testified that Brijido said, "He had been wanting to get it off his mind since Saturday [the day of the offense]." It should be noted that all the testimony regarding the voluntariness of Brijido's written and oral confessions was heard by the jury. In addition, most of the discussions between the lawyers and the court were had in front of the jury. As a result, the entire jury learned that Brijido had given a written inculpatory statement and had made oral inculpatory statements. They also learned that Israel had made statements which seriously implicated Brijido.

Had the hearing on voluntariness been had out of the presence of the jury, as requested by appellants' counsel, none of this would have been before the jury. This is particularly damaging evidence in this case as neither of the two eye-witnesses, both young girls, testified to any specific act done by Brijido. In addition, Israel Morales testified that Brijido had not participated in the fight. Finally, Brijido did not testify. His oral statement was of vital importance to the State in corroborating the evidence of the two eye-witnesses and in adding credibility to their testimony.

In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, the United States Supreme Court held that the trial court must hear evidence, outside the presence of the jury on the voluntariness of any in-custody statement made by the defendant to police officers and make a finding that the statement was given voluntari-

ly, before the statement may be presented to the jury.

Following the holding in Jackson, supra, this Court said in Lopez v. State, 384 S.W. 2d 345, 348:

"In new trials arising hereunder and in future trials in this state where there is a fair question of voluntariness of a confession of the defendant, the trial judge shall grant to the defendant the opportunity to object to the use of said confession; shall grant a fair hearing before the Court on the issue of voluntariness, and from all of the evidence, and without regard to the truth or falsity of the confession, shall make a clear cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. Upon request, such hearing shall be held and the court's ruling made in the absence of the jury. Unless the trial judge is satisfied that the confession was voluntarily made he shall exclude it."

See also McIlwain v. State, Tex.Cr.App., 402 S.W.2d 916; Treadway v. State, Tex. Cr.App., 437 S.W.2d 572; Smith v. State, 5 Cir., 395 F.2d 958; and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593.

As stated in Judge Douglas's opinion on original submission, oral confessions are subject to the same standards of voluntariness as those applied to written confessions. Lee v. State, Tex.Cr.App., 428 S.W.2d 328. See Art. 38.22(a) (2), Vernon's Ann.C.C.P.

Brijido's oral inculpatory statement should not have been admitted before the jury until the court had first determined its admissibility, and the testimony regarding the voluntariness of his confessions should not have been had in the jury's presence. As we are unable to conclude that this error was harmless, as to appellant Brijido Pena, beyond a reasonable doubt, we must grant Pena's motion for rehearing. The judgment of affirmance of his conviction is set

aside, and the judgment, as to appellant Pena, is reversed and remanded.

We finally consider the motion for rehearing of Juan Morales.

Appellant Juan Morales contends that the evidence is insufficient to support his conviction as a principal to murder with malice. The evidence may be summarized as follows:

Brijido Pena and Israel, Rene, and Juan Morales, all young men, riding in Israel's automobile, took a friend home from work. They then decided to see the body of a friend at a funeral home in Weslaco, where none of the parties resided. They inquired as to where a funeral home was located in Weslaco, discovered that their friend's body was not there, then they went in search of the other funeral home. At some point, they passed a group of boys who were standing near the street singing and had some conversation with them which was apparently of an unfriendly nature.

They then passed by the girl friend of the deceased in the case at bar, Maricela, age fourteen, who was, at that time, walking with a friend of hers. One of the young men in the car hollered at them, but Maricela did not hear what he said. A short time later, the four again passed by Maricela, this time she was standing on a corner with her younger sister, Elma, and with the deceased, Juan Ayala, who was eighteen years old. Rene yelled to Maricela, "Hey you, with the yellow shirt tail."

The young men in the car then came upon two other girls walking and two of the men got out and walked with them.

Later, the four young men again passed by the deceased and the two girls, and stopped the car. At this point, there is a conflict in the testimony between the testimony of the State's witness, Maricela, and that of Israel Morales, who was the only defendant to testify. According to Maricela's testimony, Juan got out of the car and told Ayala that he had too many girls. In her testimony, Maricela states at one point that the person who got out of the car first was the first to hit Ayala with his fist. However, her testimony varies as to who got out of the car first, Israel or Juan, and who was the first to hit Ayala.

Maricela stated that Israel got out of the car and so did Brijido. All three were engaged in a fist fight with Ayala, but Maricela could not tell who was doing what to Ayala, as she had her back to the fight and was standing between Rene and the fight. She testified that Rene never entered into the fight (Rene was not indicted). Ayala was trying to fight back. Maricela glanced back at the fight and saw Israel holding a pocket knife in a slanted position, told the men that she was going to call the police, and then ran to call the police. While she was running, she looked back and saw that the four young men were getting into their car. The four then left the scene. She testified that Israel did not have a knife in his hand when he got out of the car and that she could not say whether, during the course of the brief fight, Ayala ever fell to the ground, but he was "slumped" and had blood on his shirt when she came back to him. At that time she could not tell that he had been cut badly.

Elma testified, in far less detail, to the same facts. She saw one of the appellants kick the deceased but that she did not know which one. She did not see a knife.

Israel Morales testified as follows regarding the fight: Rene got out of the car first and said that Ayala had too many girls Then he (Israel) got out of the auto and he was followed by Brijido. Juan never got out of the car. Maricela was standing between Brijido and the fight and Brijido's only participation in the fight was to try to separate Israel and the deceased when Israel pulled out the knife. Israel stabbed Ayala one time, then they all got back into the car and drove away. The whole fight lasted only about one minute. All the parties in the car asked Israel why he had done it, and he replied, "I don't know." They did not find out that Ayala had died until several days later.

Israel testified that none of the four knew Ayala, Maricela or Elma. He further testified that he had not talked to the others about "knifing this guy down" before they got out of the car, that they had not made any plans to do anything to the deceased, that they had not conspired together, and that the other three did not even know that he had the knife with him.

A pathologist testified that the deceased died as a result of one stab wound which penetrated the heart. Additionally, the testimony from various witnesses showed that Juan and Israel had excellant reputations and that neither Israel nor Brijido had been in any fights or gotten into trouble before.

There was no showing in this record that Juan knew that Israel was armed or that he agreed with him to do any more than harass a boy who had more girls than they did. As Judge Beauchamp said in his concurring opinion in Montalbo v. State, 145 Tex.Cr.R. 140, 166 S.W.2d 694, "The conflict arose without any chance for planned action, past or present, or joint understanding about the end to be accomplished." Judge Hawkins said in the same case, "There is no hint in the evidence even that any previously formed design existed among the three appellants to kill Roquet and Rodriguez or any other person when they went to the scene of the difficulty. The evidence is positive that Mauro Montalbo actually did the killing."

The case more nearly akin to the case at bar against Juan is Thacker v. State, 131 Tex.Cr.R. 664, 101 S.W.2d 247. On original submission, Thacker's conviction was upheld as was that of his companion Harris in an earlier volume. On rehearing, Presiding Judge Morrow then reviewed the testimony and concluded that the evidence was not sufficient to show that Thacker was a principal. On the State's motion for rehearing, Judge Hawkins again reviewed the record and concluded that the evidence was not sufficient to show that Thacker had acted as principal in the killing.

Knowledge of the intent to kill the deceased is a necessary element to constitute Juan as a principal in this murder with malice. Of course, this knowledge may be inferred from the circumstances surrounding the killing. However, in the case at bar, all circumstances militate against an inference that Juan knew of Israel's intent to kill Juan Ayala. There is no evidence that Juan knew that Israel had a knife in his possession. One of the eye-witnesses testified that Israel did not display the knife until the instant that he killed Ayala; the other eye-witness never saw the knife at all. Israel testified that he did not remove the knife from his pocket until just before he stabbed Ayala, and that Juan did not know that he had the knife with him. There is no showing that Israel had ever been involved in a knife fight; all the testimony shows that he had never been in any fights. There is no showing of any prior difficulties between Juan and the deceased or of any reason why Juan should enter into a plan to kill the deceased. All the evidence shows that the deceased and his assailants did not know one another. Finally, it would appear from all the evidence that any intent that Israel may have had to kill the deceased arose during the brief fight, and that Israel in no way communicated his intentions to Juan, or, indeed, to any of the participants in or observers of the fight.

The State contends that the murder by stabbing of Juan Ayala was a natural and probable consequence of the brief fight between him and appellants, and that therefore, all participants in the fight must be held liable as principals to the murder. In every case that the writer has been able to find where a participant in a fist fight was held liable for the murder of one who died during the fight, there was evidence that the appellant actually struck the fatal blow; the deceased began to beg for mercy while the appellant was beating him or holding him for another person to beat, stab or shoot; or there was a showing of prior malice between the appellant and the deceased or a stated plan to do great harm

to the deceased. This record is completely void of any such evidence. To the contrary, all the evidence shows that none of these circumstances existed.

Having concluded that the evidence is insufficient to support the conviction of Juan Morales as a principal to murder with malice, his motion for rehearing is granted. Thacker, supra, Mowery v. State, 132 Tex. Cr.R. 408, 105 S.W.2d 239; Montalbo v. State, supra; Lee v. State, Tex.Cr.App., 214 S.W.2d 619. Cf. Buckley v. State, 78 Tex.Cr.R. 378, 181 S.W. 729. The judgment of affirmance as to Juan Morales is set aside, and his cause is reversed and remanded.

ODOM, Judge (concurring on Appellants' Motion for Rehearing).

I concur in the results reached by Judge Morrison, but for the reasons expressed herein.

It is apparent to this writer that, when the record is viewed in its entirety, there is a conflict of defenses between the three appellants. The record reveals a confession by Israel Morales admitted into evidence when it was introduced by his counsel. The record further reveals that oral inculpatory statements were made by Brijido Pena, the said oral confession having been admitted into evidence without a hearing on the voluntariness thereof having been conducted as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774; 12 L.Ed.2d 908, and Art. 38.22, Sec. 2, Vernon's Ann.C.C.P. The record does not contain a statement made by Juan Morales.

Under these circumstances, counsel had to wear three hats when he represented all three appellants at the trial. This resulted in material harm to appellants Brijido Pena and Juan Morales. If counsel had been successful in his motion for severance he probably could have avoided this conflict, but in a joint trial each of these appellants should have been represented by separate counsel so their respective defenses and individual rights could have been protected.

For these reasons, I would affirm as to Israel Morales; reverse and remand as to Brijido Pena and Juan Morales.

ROBERTS, J., joins in this concurrence.

DOUGLAS, Judge (dissenting on Appellants' Motion for Rehearing).

I dissent to the reversal of this cause for the reasons set forth in the opinion on original submission and especially to the plurality opinion on rehearing where the facts are construed not in the light most favorable to the verdict.