**John Wesley WALSH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–83–254–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 14, 1983.

David K. Chapman, San Antonio, for appellant.

Linda C. Anderson, Asst. Dist. Atty., San Antonio, for the State.

Before FENDER, C.J., and HUGHES and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, John Wesley Walsh, was convicted of murder after a joint trial before the court with co-defendant Joe Angel Martinez. Walsh was sentenced to twenty (20) years imprisonment.

We affirm.

Walsh raises four grounds of error asserting: (1) the evidence is insufficient to show that he was a party to the offense of murder; (2) the judgment finding him guilty as a party is contrary to the great weight and preponderance of the evidence; (3) the trial court erred in admitting the co-defendant's oral statements because the State failed to prove the statements were voluntary; and (4) the trial court erred in failing to hold a hearing on the voluntariness of the statements.

The record reveals that Walsh, his girlfriend Kimberly Walpole, Ray Robinett[1] and Joe Angel Martinez were playing pool in a bar with the victim, Martin Aguirre. Aguirre and Walsh argued about the pool game, but Aguirre agreed to give Walsh and his companions a ride home after their attempts to keep Robinett's car running

---

1. In the record "Robinett" is spelled "Robinett" and "Robinette". For the purposes of this opinion we will spell it "Robinett".

ended in failure. During their attempts to get the car started, Walsh bumped Aguirre and Martinez took Aguirre's wallet.

All five people got into Aguirre's car for the drive to Walsh's home. They stopped to go to the bathroom at Walsh's request and Walsh, Robinett and Martinez got out and discussed stealing Aguirre's car. Walsh told Martinez to "forget about taking the car" and told the police that "We were going to take the old man's car but we didn't have any [gas] so we blew it off". The three got back in the car and continued driving to Walsh's home.

About a block away from Walsh's house, Robinett told Aguirre to turn left on to a dirt road. Martinez testified that Robinett told Aguirre it was his dad's ranch and they had to be careful or a ranchhand would shoot them. Walsh testified that there was a gate across the road which one of them got out and opened. Martinez testified that he "figured some thing [sic] was up and got out of the car and Ray [Robinett] told the man to come on with them ..." The four men got out of the car at this point.

Walsh "pushed the old man" when they first got out. Then the four men stood beside the car talking with Robinett behind Aguirre and Walsh and Martinez in front of him. Robinett "walked over beside the car, because the car door was opened, and he opened up his knife (sic). He walked behind Mr. Aguirre and put his arm around him and cut his neck."

When Walsh saw that Aguirre's neck was cut, he took Walpole up the road and told her not to move. He went back toward the car. Aguirre was walking toward Walsh and Martinez when Walsh "hit the man in the head with a flashlight that had come from the car." Robinett then threw Aguirre to the ground and began stabbing him.

■ The evidence, when construed in a light most favorable to the State, is sufficient to support Walsh's conviction as a party to the offense. A defendant is guilty as a party where he is physically present at the commission of the offense and encour-

ages its commission either by words or other agreement. He can be guilty as a party whether he aided in its actual commission or not. It is permissible to look to events occurring before, during and after the offense as well as to actions of the parties which show an understanding and common design to murder the deceased. *Barron v. State,* 566 S.W.2d 929 (Tex.Cr.App.1978).

Walsh cites *Alvarado v. State,* 632 S.W.2d 608 (Tex.Cr.App.1982) as authority for the proposition that he did not know of Robinett's intent to kill and could therefore not be a party to the murder. In *Alvarado,* four police officers testified that the behavior of the two men involved indicated to them that the defendant was merely a witness. In the instant case, although the testimony shows that neither Walsh nor Martinez had knowledge that Aguirre's throat was cut until Martinez "touched it", it is difficult to believe Walsh's claim that he had no idea that Aguirre was going to be hurt. Martinez testified that he "figured something was up" and that Robinett had talked about doing something like he did to Aguirre. Furthermore, the record shows the three men surrounding Aguirre and Walsh pushing Aguirre before Aguirre's neck was cut and striking Aguirre in the head with a flashlight afterwards. We do not think that Walsh was a mere witness.

■ Walsh also cites *Morales v. State,* 466 S.W.2d 293 (Tex.Cr.App.1971) as closely on point for its holding that the evidence against Juan Morales as a party was insufficient because there existed no evidence that Juan knew that Israel Morales was armed or that he agreed to do any more than harass a boy who had more girls than they did. In the instant case there is the circumstantial evidence in Walsh's striking of Aguirre with the flashlight after he knew Aguirre's throat had been cut. The coroner's report indicates blunt trauma to the head which could only have come from this blow. Ground of error one is overruled.

■ Ground of error two asserts that the judgment is contrary to the great weight and preponderance of the evidence.

The proper standard of review for fact issue questions in criminal cases is sufficiency of the evidence to support the conviction. *Combs v. State,* 643 S.W.2d 709, 716 (Tex. Cr.App.1982). Ground of error two is overruled.

■ Grounds of error three and four complain of the admission of co-defendant Martinez's statements over objection because the State failed to prove they were voluntarily made and the court did not hold a hearing as to their voluntariness. The record reflects the following in the cross-examination of Martinez:

Q. Do you recall talking to a Detective Sowell and Detective Wolfe?

A. Yes.

Q. Did you tell them what you told the Court here today at that time?

A. They never took none of it separately. They always had us where we could see each other. So I never did really attempt to say anything.

Q. Did you tell them a different story?

MR. CALLAHAN: Your Honor, I object to any oral statements that may have been given if they were not given—reduced to writing and proper predicate laid.

THE COURT: Under what theory do you offer this statement, sir?

MR. WEIDENBACH: Your Honor, the defendant is testifying to some matters that are not in his confession. I believe that he has waived that right by taking the stand and giving a voluntary statement. And now he is trying to add things to it that were not told immediately to the police officers in the investigation. And I believe that is relative to show the state of mind.

THE COURT: That is the only basis on which you offer it?

MR. WEIDENBACH: To repute (sic) the defendant's testimony on cross-examination.

THE COURT: I suppose under 38.22 Section (5) it is admissible as bearing upon the credibility of the accused as a witness. Overruled.

QUESTIONS BY MR. WEIDENBACH:

Q. What did you tell the police officers, Detective Sowell,  happened when you were first interviewed about this?

A. Nothing. I—he kept questioning me about what happened. I believe we gave him a prearranged story.

Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 1979) requires an independent finding by the court as to whether a statement of the accused was made under voluntary conditions *when a question is raised as to its voluntariness.* Defense counsel's objection did not raise this question. He only objected to oral statements not reduced to writing with a proper predicate laid. The statements at issue were reduced to writing and a proper predicate had been laid.

■ Walsh cites *Figueroa v. State,* 473 S.W.2d 202 (Tex.Cr.App.1971) for the proposition that the objection made was sufficient to raise the issue of voluntariness. In *Figueroa,* the court held that the voluntariness issue was clearly raised by repeated objections *and* by the testimony of the defendant in that case. *Figueroa, supra,* at pp. 204, 205. The single objection for failure to lay a predicate in the instant case is a far cry from the "repeated objections" and the testimony of the defendant in *Figueroa.*

The judge in ruling on the objection did refer to Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 1979) in telling counsel that he was admitting the prosecution's evidence of the distinctions between Martinez's stipulated and properly predicated statements which had been reduced to writing and Martinez's trial testimony as bearing on Martinez's credibility and not on the issue of his guilt or innocence. This ruling does not raise the issue of the voluntariness of these statements. Furthermore, Martinez did not specifically testify as to any other oral statements than the ones reduced to writing and in the record and none were used.

■ Lastly, even if the objection was sufficient to raise the issue of voluntariness, it was not timely made to preserve error. The record reflects that Martinez had al-

ready been asked this question and had responded to it without objection. *Morales, supra,* at p. 296. Grounds of error three and four are overruled.

The judgment is affirmed.